OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
By verified petition, the mother of Mary P. alleges that her daughter, lS1/^ years of age, is a person in need of supervision (PINS) within the meaning of subdivision (b) of section 712 of the Family Court Act. While various allegations are made against Mary, the issue presented herein concerns the legal sufficiency of the first, namely, “that respondent is pregnant and refuses to have an abortion.” Furthermore, the petitioner mother makes a specific request, on the face of the petition that her daughter be subjected to the most restrictive dispositional alternative, court-ordered placement (Family Ct Act, § 754).
For her part, Mary has repeatedly maintained that she wishes to give birth, a position she reiterated once again in open court. Her due date for delivery is approximately six months hence. There is no allegation made that an abortion is medically necessary or even desirable for Mary, or that she lacks sufficient maturity to make an informed judgment on whether to give birth.
Implicit in the first allegation against Mary are the assumptions that parents have an absolute right to direct *533 their minor daughter to have an abortion; that the daughter has no right to refuse; and that should such refusal be asserted, that the State, through its Family Court, may intervene to force compliance with the parental directive by branding the daughter “incorrigible, ungovernable or habitually disobedient” and placing her for an initial period of up to 18 months. (Family Ct Act, § 712, subd [b]; §§ 754, 756.) For the reasons that follow, these assumptions. are fundamentally incorrect and contravene a basic constitutional freedom.
There is, perhaps, no issue more volatile in our Nation today than the question of abortion. The mere mention of the word triggers both passions and opinions from which there is virtually no retreat and even less inclination toward reasoned dialogue. However, in resolving this case, it is neither necessary nor appropriate to discuss the merits of abortion. The issue presented herein finds its resolution in constitutional principles clearly enunciated by the United States Supreme Court. These principles, and the decisions that embody them, are the law of the land to which this, and all courts, must remain firmly committed.
In Roe v Wade (410 US 113) the Nation’s highest court reiterated that the concept of liberty protected by the due process clause of the Fourteenth Amendment envisions a freedom of personal choice in various matters involving marriage and family life. Thus, the liberties expressly set forth in the Bill of Rights are not the full measure of constitutional protection accorded the citizen in matters of personal freedom. Citing certain zones of privacy that are protected by the Fourteenth Amendment, the Supreme Court held that the scope , of that protection extends to a woman’s decision whether or not to have an abortion.
In Planned Parenthood of Cent. Missouri v Danforth (428 US 52) the Supreme Court struck down a Missouri statute that required parental consent before a child may have an abortion. Asserting once again that the Constitution is not for adults alone, the court held that a provision giving any third party a blanket veto over the decision to abort is necessarily unconstitutional when measured by the Roe guidelines. Moreover, despite the traditional right of parents to direct their child’s upbringing (Pierce v Society of *534 Sisters, 268 US 510), the Supreme Court has held that the child’s personal right to have an abortion is so rooted in fundamental liberty as to foreclose any absolute parental right to be consulted about, much less veto, their child’s decision to abort (Bellotti v Baird, 443 US 622).
In the instant case, the petition assumes an absolute parental veto over a child’s decision to give birth. Quite obviously, if the right to abort is within the zone of privacy protected by the Fourteenth Amendment, the right to give birth exists there as well. It should be beyond question that the decision to give birth is “fundamental” and “implicit in the concept of ordered liberty”. (Palko v Connecticut, 302 US 319, 325.) And, hence, for the precise reasons set forth in Planned Parenthood of Cent. Missouri (supra), parents may not utilize the State court system to exercise or enforce a blanket veto over their daughter’s fundamental right to give birth.
Concededly, there are some activities of children that may be subject to State regulation to a greater degree than those of adults. (Bellotti v Baird, supra; Prince v Massachusetts, 321 US 158; Ginsberg v New York, 390 US 629.) And, indeed, the State may deny an abortion to a child where she lacks sufficient maturity to make an informed judgment and, at the same time, the abortion would not serve her best interests (Bellotti v Baird, supra).
However, the facts alleged in the petition filed against Mary are insufficient as a matter of law to justify State intervention in her freedom of choice guaranteed by the Fourteenth Amendment.
The directive sought to be enforced in this case is neither lawful nor constitutional. Being free to disregard it, the child cannot be censored as “incorrigible, ungovernable, and habitually disobedient” for doing just that. For the foregoing reasons, the first allegation against Mary P. must be striken from the petition as legally insufficient as a matter of law.
The balance of the petition, the substance of which is not germane to the issue herein presented, is sufficient to establish a PINS cause of action. However, after listening to the petitioner mother, Mary, and the Law Guardian, the *535 court believes that the best interests of the child would be served by adjourning the case in contemplation of dismissal pursuant to subdivision (a) of section 749 of the Family Court Act. In this regard, it should be noted that plans have been formulated to provide Mary with adequate care and preparation for the birth of her child. Accordingly, the case is adjourned until the date specified at which time the petition will be dismissed provided that Mary has complied with the terms of the order.
Although the petitioner mother has indicated that she now accepts Mary’s decision to deliver her child, the court believes that additional safeguards should be taken to insure that there is no further parental interference with Mary’s stated determination to give birth.
Section 759 of the Family Court Act provides, inter alia, that an order of protection may issue in assistance of any other order made under article 7 of the Family Court Act. Subdivision c of section 759 permits the court to enjoin a parent from “offensive conduct against the child”. Since Mary has expressed very clearly, and very finally, her determination to give birth, that decision is entitled respect.
The court is well aware that parents may and should play a meaningful role in counseling their children on all matters involving their well-being. (Ginsberg v New York, supra.) Moreover, a minor’s decision on whether or not to abort is of such far reaching consequence and sensitivity as to cry out for the understanding counsel of parents who care. (See Planned Parenthood of Cent. Missouri v Danforth, 428 US 52 [Stewart, J., concurring opn, p 91].) And yet, such counsel must originate from the premise that it is the child who has the ultimate right to decide. Children are not the chattel of their parents. Rather, they are citizens in their own right, endowed with certain fundamental freedoms of which they may not be divested by parental fiat. The right to give birth is among those freedoms.
Inevitably, there comes a point in time when the child’s decision making process reaches fruition, with or without parental input, and a firm choice is made. Mary has made her choice and it is, indeed, her choice to make. In deciding to give birth, she has exercised a personal liberty guaran *536 teed to her by the Fourteenth Amendment. Her decision now requires parental forbearance. yThere is a very thin line between counsel and coercion^ especially when they originate from a relationship as special as that of parent-child. A child’s right to decide for herself whether or not to give birth is particularly susceptible to subversion by a parent. Thus the free exercise of her will may be overcome by feelings of guilt, disloyalty, and even fear. Surely not every parental reaction to a child’s pregnancy is as overt as that of the petitioner’s herein. To the extent that parents, either directly or indirectly, fail to respect their child’s right to make the ultimate decision on whether to give birth, their conduct may indeed be labeled “offensive” to the child within the meaning of subdivision (a) of section 759 of the Family Court Act.
Accordingly, in order to protect Mary’s constitutional right to give birth, the court herewith issues an order of protection to her pursuant to section 759 of the Family Court Act. The petitioner mother is ordered not to interfere with Mary’s determination to deliver her child nor to attempt to force Mary to have an abortion. Among the permissible penalties for failure to comply with the order of protection is a jail term not to exceed six months. (Family Ct Act, § 780.) Hopefully, the petitioner mother will adhere to her recent statement indicating support for her daughter. As the date for delivery approaches, Mary would be best served by her mother standing beside her at home rather than against her in court.