OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
The petitioner in this proceeding alleges that her daughter is a person in need of supervision (PINS). For the purpose of this proceeding, Family Court Act § 712 (a) defines such a person as one who is "incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent”.
The petitioner mother alleges that her daughter, Lori, is associating with a 21-year-old lesbian named Ellen.[1] This petition was filed when Lori absconded from home in defiance of her mother’s directive that she have no contact or communication whatsoever with her older friend. Since that date, the respondent has been living with her maternal aunt, to whom she confided that she was bisexual. Neither the respondent’s mother nor her aunt have had any other disciplinary problems with the child. She is obedient, respectful, and regularly adheres to her curfew. Lori attends a parochial high school on Staten Island where she receives excellent grades. The petitioner conceded that her complaint is based on the fact that the relationship is lesbian in nature and not the fact that *494 Ellen is 21. The mother admitted that she would not be so upset if Lori was with a 21-year-old male.[2]
The child testified on her own behalf at the hearing and the court was most impressed with her maturity. She stated very clearly that there had been no coercion involved and that it was her own decision to enter into this relationship. She stated that she has also had relationships with boys and that she has not made a final choice as to her sexual preference but that for now she is in love with Ellen, enjoys being with her, and wants to continue the relationship. Lori testified that she is very comfortable with her sexual feelings and does not believe that there is any need for counseling. She stated that her classmates at school are not aware of her feelings or her relationship with Ellen. And while she would prefer for things to remain that way, she is determined to persevere in this relationship regardless of what reaction that may' evoke from her classmates, friends, or the general public.
Although this dispute originated between mother and daughter, the mother, by her petition, seeks to invoke the State’s intervention to force an end to the relationship between Lori and Ellen. Thus, the issue becomes whether the State may seek to regulate the respondent’s sexual orientation, as it clearly could not do for an adult, or whether her choices in this area are constitutionally protected.
The Law Guardian has argued that the respondent’s sexual orientation and choices in pursuit thereof are protected as falling within her constitutional right to privacy.
The question of whether or not a child has a constitutional right to privacy was first confronted by the Supreme Court in Planned Parenthood v Danforth (428 US 52 [1976]) when it struck down a statute that required parental consent before a child could have an abortion. The court held that a blanket parental consent requirement violated the constitutional rights of minors. The court emphasized that minors are protected by the Constitution and possess constitutional rights and that these rights do not suddenly arise at the age of majority. The court concluded that any parental interest in the child’s pregnancy did not outweigh the minor’s right of privacy. (Planned Parenthood v Danforth, supra, at p 75.)
*495 The right of privacy was defined in Whalen v Roe (429 US 589 [1977]) as including an interest by the person in "avoiding disclosure of personal matters” and the independence to make "certain kinds of important decisions” without interference. (Whalen v Roe, supra, at pp 599-600.)
In Carey v Population Servs. Intl. (431 US 678 [1977]) a New York statute prohibiting the sale of contraceptives to minors was found unconstitutional. A minor’s right to privacy was again explicitly recognized and extended to include decisions by minors regarding procreation. (Carey v Population Servs. Intl., supra, at p 692.) The court further held that State restrictions inhibiting privacy rights of minors are valid only if they serve a significant State interest that is not present in the case of an adult. (Supra, at p 694.) In Carey, as in Planned Parenthood (supra), the court found that no such interest justified State intervention in a minor’s decision to have an abortion or obtain contraception.
In the situation before this court, the respondent invokes her right of privacy to decide and pursue her own sexual orientation. Homosexuality is no longer considered a psychiatric illness,[3] and the court does not presume to make a moral judgment regarding the respondent’s choice. As noted above, the Supreme Court has held that a mature child’s right to make her own decision regarding abortion and contraception is constitutionally protected from parental or State interference. Where a child demonstrates sufficient maturity, her sexual orientation and choices in pursuit thereof must be held to be similarly protected.
Concededly, the constitutional rights of children cannot be completely equated with those of adults. (H.L. v Matheson, 450 US 398; Bellotti v Baird, 443 US 622; Prince v Massachusetts, 321 US 158; Ginsberg v New York, 390 US 629.) And it is clear that parents have not only the right but the obligation to direct the upbringing of children under their control. This parental right is of constitutional dimension and is, itself, entitled to protection. (Pierce v Society of Sisters, 268 US 510.) And where a child habitually disobeys the reasonable commands of his or her parents, State intervention by the parent may be had under Family Court Act article 7. However, not every parental direction may be enforced by State action. For example, if a parent were to forbid his or her child to associ *496 ate with members of a particular race, the power of the State’s judiciary could not be invoked to carry out the parent’s wish. Such would entail impermissible State action. (Shelley v Kraemer, 334 US 1.) Similarly, where a parental edict affects a substantial right of the child and is opposed by the child, resolution of the matter depends upon the nature of the right asserted by the child and the child’s maturity.
In Wisconsin v Yoder (406 US 205 [1972]), which upheld a parent’s right to keep his child out of school for religious reasons, Justice Douglas in his dissent addressed an issue not raised by the majority. He contended that the children involved were entitled to have their views heard as to whether their education should be curtailed because of their religious beliefs. Justice Douglas felt that the child asserting his rights in opposition to his parent must be "mature enough to have that desire respected”. (Supra, at p 242.) In footnote 3 on page 245 of his opinion, he suggests that by age 14, most children are approaching moral and intellectual maturity.
Similarly, the New York courts have held that by age 14, a child is generally mature enough to have his choice of a religion respected, even if it conflicts with the views of his parents. (Martin v Martin, 308 NY 136; Hehman v Hehman, 13 Misc 2d 318.)
This 15-year-old respondent in this case impressed the court with her maturity. It is clear that she has given a great deal of thought to her decision and its possible ramifications. And, since the right being asserted by her falls within the constitutionally protected zone of privacy, her mother may not invoke the power of the State to intervene. When the respondent left her home, she went to live with her aunt where she was well behaved and regularly attended school. The court cannot adjudicate the respondent a person in need of supervision because of action on her part that was reasonably calculated to protect her constitutional rights. (Matter of Mary P., 111 Misc 2d 532.)
Although the respondent is free to choose her sexual orientation without interference from this court, she is not free to act entirely as she wishes. Penal Law § 130.40 provides, inter alia, that it is a class E felony for someone 21 years of age or older to engage in deviate sexual intercourse with a person less than 17 years of age. Notwithstanding the level of maturity reached by Lori, the Legislature has undertaken to proscribe such conduct in absolute terms insofar as children *497 under 17 are concerned. Accordingly, Lori is admonished in the strongest terms to avoid engaging in any conduct violative of the Penal Law of this State.[4]
The court believes that the petitioner mother is a sincere person who really loves and cares about her daughter. It would be in the interest of both Lori and her mother to reconcile their differences within the framework of this decision. Accordingly, a referral is made for both of them to Family Court Services for counseling to assist them in implementing this decision. While participation is voluntary, the court urges both parties to work toward a rehabilitation of the parent-child relationship.
For the reasons set forth herein, the petition is dismissed.

. To enhance the confidentiality of the parties, all names used herein are fictitious for purposes of publication.

. The petitioner also testified that Ellen was an unsuitable friend for Lori independently of her lesbian life-style. However, the mother’s other allegations against Ellen were denied by Lori and not established, in the court’s mind, beyond a reasonable doubt. (See, Matter of Iris R., 33 NY2d 987.)

. See, American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 282 (3d ed 1980).

. Lori admitted to being intimate with Ellen on two occasions. This cannot, however, be considered as a basis for a PINS finding against her since such a charge was not specifically set forth in the pleading. (See, Matter of Reynaldo R., 73 Misc 2d 390.) Nor can the court presume that Lori will disregard the court’s admonition in futuro. In fact, the court believes that Lori is sufficiently mature to realize that a repetition of such conduct would jeopardize Ellen’s freedom. Nor could this court permit her relationship to continue if to do so would result in violation of State law.