Ralph E. Cory, J.
Petitioner, father of Reynaldo, alleges that respondent should he judged a person in need of supervision and dealt with in accordance with article 7 of the Family Court Act in that “ respondent absconded from home on November 28th, 1972 and refuses to return. The respondent does not obey the just and lawful commands of his parents and has been excessively truant from school.”
The facts as developed from the direct testimony of respondent’s mother and respondent and cross-examination of respondent’s mother by the Law Guardian are substantially as follows: The petitioner (father of child) did not testify.
Respondent denied that he absconded from home. He admitted he lived in a furnished room not too far from his parents’ home, and he informed them where he was. The respondent’s mother admitted she knew where her son was, and had gone to see him at that place. Respondent testified he visited his parents weekends and on other occasions; testimony not effectively rebutted by the mother.
The respondent testified he had obtained gainful employment, even though only 14, while living away from home. The testimony did not reveal any serious attempts by the mother or father to have the respondent return home or physical attempts or other action to have him do so, except that when the petition was filed, the petitioner prevailed upon the Family Court to issue a warrant for the respondent alleging he did not know his whereabouts, and he was a runaway. This was false information contrary to the facts well within the knowledge of the petitioner and was reprehensible conduct, since the parents knew where the respondent was at all times.
The respondent’s mother testified as to the respondent’s alleged refusal to obey ‘ ‘ the just and lawful commands of his parents ”, that, the parents warned him to stay away from a certain male friend whom they referred to as “ undesirable ” but setting forth no specific reasons for this description. The respondent testified that on occasions he was locked up in his room all day and which he gave as a reason for leaving home. There was no other credible evidence given of respondent’s alleged refusal to obey the just and lawful commands of his parents except that the respondent admitted he was not attending school regularly.
On consent of the parties and the attorney for the respondent, an emergency psychiatric evaluation of the respondent was held prior to the hearing. The doctor’s testimony in open court was that the respondent was not psychotic or antisocial, did not hate his parents, and was willing to return home. Respondent firmly *392 believed that by working and becoming self-reliant, and by paying his own way, he was acting in his own best interests and that of his parents in the traditional American manner. The psychiatrist further testified that no further treatment of the respondent or psychiatric evaluation was necessary. The Law Guardian made a motion to dismiss the petition at the end of the hearing, on which the court reserved decision.
There was no absconding by the respondent under the facts and circumstances of this case. There never was any intent by the respondent not to return. Abscond which comes from the Latin “ ab ” means from or away and “ condere ” to hide. To abscond means to retire from public view or from the place in which one resides or is ordinarily to be found; to withdraw or absent oneself in a private manner; to conceal oneself; appropriately used of persons who secrete themselves to avoid a legal process; to hide, withdraw and conceal. (Webster, Unabridged Universal Dictionary, vol. 1, p. 7 [World Syndicate Pub. Co., Cleveland, Ohio, New York, New York, 1937].) To abscond in the eyes of the law means something more than a temporary absence for health. It involves a design to withdraw clandestinely, to hide or conceal one’s self for some purpose such as avoiding legal proceedings. (McMorran v. Moore, 113 Mich. 101, 104; Ballentine’s Law Dictionary [3d ed.], p. 5.)
Obviously, none of the elements of absconding as above set forth are present in the instant case and that portion of the allegations fails utterly. It cannot stand the light of day and like a delicate light bulb, falls to the floor and crashes into a thousand pieces. Furthermore, it is carefully to be noted that the alleged act of absconding took place on November 28,1972. The petition was filed January 9, 1973 some six weeks later, evidencing little or no concern by the parents over an alleged absconding son. The parents’ behavior here is very much suspect. It is a reductio ad absurdum (a reduction to the absurd). One cannot look at a rainbow with mud on his shoes.
It is exceedingly difficult to determine the real meaning of the words ‘ ‘ just ’ ’ and ‘ ‘ lawful ’ ’ commands of the parent. Definitions differ in each and every situation as does the day from the night, with many being warped in fanatacism and rigidity and out of touch with today’s modern world in the relationship of parent and child.
Furthermore these words “ just and lawful ” are not in the statute (see Family Ct. Act, § 712, subd. [b]). This statute defines a person in need of supervision as one under the age of 16 “ who does not attend school ” regularly in accordance with *393 the provisions of part I of article 65 of the Education Law “ or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority.”
None of these specific requirements are alleged on the petition. The petition states merely that the respondent does not obey the just and lawful commands of his parents. Under the facts and circumstances of this case the respondent has not been proven to be incorrigible, ungovernable or habitually disobedient beyond a reasonable doubt. Due process requires proof beyond a reasonable doubt. (Matter of Winship, 397 U. S. 358.)
Fact-finding hearings with juvenile delinquents and persons in need of supervision in no way differ and both require evidence that is competent, material and relevant and proof beyond a reasonable doubt. (Matter of Michael E., 68 Misc 2d 487.) There was no such competent, material and relevant evidence in this-case, no proof beyond a reasonable doubt that would sustain the allegations of the petition.
Interference with the life of a child should be based on the highest degree of certitude. Drastic action by court intervention is not dictated by the facts and circumstances of this case. Rather, these circumstances fit more into the pattern of leaving a child alone to see if he outgrows the particular difficulty involved. This petition alleges only isolated acts, not a chronic pattern of behavior. Generally, ungovernability is exceedingly open, notorious and habitual. There is no proof of ungovernable conduct beyond a reasonable doubt in view of the fact that in this case there was no absconding; one instance, not proven sufficiently of refusing to obey a just and lawful command of a parent (going with an allegedly undesirable person where no evidence of undesirability was proven). (Midonick, Children, Parents and Courts: Juvenile Delinquency, Ungovernability and Neglect, pp. 91, 92 [Practicing Law Inst., N. Y., 1972].)
There are limits to societal intervention in the family, as decided by the United States Supreme Court. There exists a realm of family life which the State cannot enter without substantial justification. Society cannot interfere with the liberty of parents to direct the upbringing of their children unless there is a compelling State interest. (Griswold v. Connecticut, 381 U. S. 479; Meyer v. Nebraska, 262 U. S. 390; Prince v. Massachusetts, 321 U. S. 158; Pierce v. Society of Sisters, 268 U. S. 510.) A compelling State interest and substantial justification to enter into the realm of family life is not shown by the facts and circumstances of this case. Parents have abused the privilege of person in need of supervision (pins) petitions in the *394 Family Court without sufficient justification or proof and more often than not the court has gone along with such procedures. pins petitions should never be granted or drawn automatically. The petition in the instant case could have been effectively prevented at the intake level by a more exhaustive inquiry into the facts, particularly in view of the subsequent report by the psychiatrist.
This court is of the firm view that no petition alleging a person to be in need of supervision can stand unless the acts complained of are set forth in specific terms with dates and frequency, the nature of the behavior and conduct charged. The conduct must be habitual, not an isolated instance and the general allegations pursuant to subdivision (b) of section 712 must be set forth in the petition supported by sufficient facts and circumstances as to show ungovernability, incorrigibility, habitual disobedience and acts beyond the control of parent or lawful authority. Otherwise, there is a violation of child’s constitutional rights to notice of charges against him in time to prepare for trial, not at the time of trial. None of these rights can be taken away from children merely because their conduct is noncriminal or the subject of a pins petition. (Matter of Gault, 387 U. S. 1.)
Even as to truancy from school, there was not sufficient evidence as to dates, times, frequency, school records, etc. This should have been a separate petition in which the Bureau of Attendance Officer would be the petitioner.
A petition merely alleging that the respondent ‘ ‘ does not obey the just and lawful commands of his parents ” is dangerously defective. All human actions are either just or unjust as they are in conformity to or in opposition to the law. Are we to allow a parent who in a pins hearing is the complainant against his or her own child to be the sole judge of the terms 1 ‘ just and lawful commands.” This is one of the most uneven contests in human relationships, mother or father against his child. The child needs the protection of the court to see that even his most elementary rights are protected in the manner hereinabove explicitly set forth.
A parent in a pins petition has no divine right to. be right. Their actions and conduct must be more carefully screened than those of the accused child. If the court is going to be asked to substitute its rehabilitative plans where parental discipline and .relationship to child have broken down irretrievably in the home, it must do so only after proof beyond a reasonable doubt that its intervention is necessary. The Family Court is not the partner or copartner with the parent in the proper upbringing of *395 children. There is much to be lost in intercession by the court, because of the misbehavior which may have been merely a manifestation of adolescent immaturity that will pass away on its own and not a sympton of serious social or psychological pathology. (Midonick, Children, Parents and the Court, supra, pp. 15, 16, “ The walls that are laid in darkness, May laugh to the kiss of the sun.”) The instant case fits into these definitions. The totality of the facts adduced at the hearing negated the conclusion that respondent was a person in need of supervision within the meaning of subdivision (b) of section 712 of the Family Court Act requiring that such a person be habitually truant, or incorrigible, ungovernable or habitually disobedient and beyond lawful control of parents or other lawful authority. (Matter of Richard W., 29 A D 2d 873.)
The motion of the Law Guardian to dismiss the petition is granted. The petition, is dismissed.