Fuchsberg, J.
Cecilia R, at the age of 13 years, was adjudicated a person in need of supervision (PINS) by the Family Court, Kings County, and ordered placed at a State training school for 18 months. The principle issue on this appeal is whether she was deprived of her Federal and State constitutional guarantees of due process because the hearing which resulted in her placement, save for the dispositional pronouncement itself, was conducted in her absence.
New York law defines a person in need of supervision as one less than 16 years of age "who does not attend school * * * or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority”. (Family Ct. Act, § 712, subd [b]; see Matter of Patricia A. 31 NY2d 83.)
The Family Court has exclusive jurisdiction over PINS proceedings (Family Ct. Act, § 713), which are originated by the filing of a petition "specifying the acts on which the allegations are based and the time and place they allegedly occurred” (Family Ct. Act, § 732, subd [a]).
Once the proceeding is before the court a "fact-finding hearing” (Family Ct. Act, § 742) is held to determine whether the acts of the respondent come within the PINS definition of subdivision (b) of section 712. Following completion of the fact-finding hearing, a "dispositional hearing” must be held "to determine whether the respondent requires supervision [or] treatment” (§ 743). It was during the dispositional hearing that the absence involved here occurred.
This PINS proceedings was commenced on October 4, 1973 *319 by a petition alleging that Cecilia was beyond the control of her foster home. The fact-finding hearing held in January, 1974 resulted in a finding that she committed the acts alleged in the petition and she was remanded to a nonsecure detention (NSD) program[1] while placement planning efforts were attempted by her probation officer. On March 20, 1974 at the scheduled hour of 11:00 a.m., accompanied by her law guardian,[2] she appeared in court ready for her dispositional hearing. It will be useful to review what happened that morning in some detail.
Cecilia’s mother had not appeared by 11:00 a.m. and the proceeding was recessed. On recall at 12:30 p.m., the court was informed by the NSD social worker that Cecilia had gone to the store and would be right back. The Judge then proceeded to question the mother about her ability to care for her daughter. After brief questioning, the court noted Cecilia’s continued absence. Her law guardian then stated "She was there [outside the courtroom] the last time I walked in the door. Perhaps we can determine why the probation officer is making [his] recommendations.” Thereafter, in Cecilia’s absence, the probation officer reported that numerous private agencies had rejected her and, because of these rejections, he recommended State training school placement.
After colloquy between court and law guardian, and between court and mother, the court ordered Cecilia brought into the courtroom. She then appeared and the Family Court Judge announced the disposition, ordering that she be placed with the Division for Youth, Title 3 (Executive Law, art 19-G), at a State training school.[3]
The consequences of a PINS dispositional hearing are wide-ranging. They go all the way from the power to discharge a respondent with warning (Family Ct. Act, § 754) to compulsory placement for an initial period of 18 months, the disposition in Cecilia’s case, plus further extensions without consent until age 18 (Family Ct. Act, § 756).
Keeping in mind the crucial effect that the disposition of a *320 PINS proceeding can have on the life of a youngster, whose liberty in a secure facility can be as circumscribed as in a penal institution, it is not surprising that the Family Court Act’s article 7, which deals with both juvenile delinquency and PINS cases, states in its very first section, in relevant part: "The purpose of this article is to provide a due process of law * * * for devising an appropriate order of disposition for any person adjudged * * * in need of supervision.” (Family Ct. Act, § 711.)
The due process to be accorded a juvenile pursuant to our New York family law statutes is consistent with the decision of the United States Supreme Court in In re Gault (387 US 1), requiring States in the adjudicatory phase of juvenile delinquency proceedings to give written notice to the child and his parents of the specific issues they must meet, advise them of their right to be represented by counsel and to have counsel appointed, to apply the constitutional privilege against self incrimination and to afford the right of confrontation and cross-examination of witnesses. Subdivision (b) of section 745 of the Family Court Act which reads that "An adjudication at the conclusion of a dispositional hearing must be based on a preponderance of the evidence”, spells out yet another due process standard. Thus, the fundamental principle that a defendant has the right to be present at his own trial must be said to carry over with hardly any diminished force in the framework of dispositional hearings held in the less formal setting of our juvenile courts.
In People ex rel. Arthur F. v Hill (29 NY2d 17, 19) this court held that, where extension of a training school placement is sought, an adjudged juvenile delinquent has a due process right to a postdispositional hearing in order to inquire into the reasons for the requested extension "and otherwise to refute them, if possible”. To similar effect are People ex rel. Silbert v Cohen (29 NY2d 12, 16), where this court held that an adjudged juvenile delinquent on parole from a State training school is entitled to a parole revocation hearing to "assure, to the court as well as to the parolee, that the court is accurately informed of the facts”, and People ex rel. Guggenheim v Mucci (32 NY2d 307), holding that, unless evidence establishes probable cause to detain an alleged juvenile delinquent and facts justifying delay beyond several days, a juvenile may not constitutionally be detained for more than three days. Judge, now Chief Judge, Breitel, writing for the court *321 in Guggenheim, said (p 313), "It would take a distorted view to believe that adult felony criminal proceedings were designed to be more tender of the rights of detained adults than the Family Court proceedings are of juveniles.”
The tenets in the cited cases go beyond the juvenile delinquency matters they involved. They represent governmental recognition of important due process rights of juveniles threatened with loss of liberty in other types of proceedings as well. Specifically, they bespeak a juvenile’s right to be present during the dispositional phase of a PINS proceeding.
It cannot be said with certainty that, if Cecilia had been present even throughout her dispositional hearing, her placement would have been any different. But then she at least would have had the opportunity, for example, to react to testimony, reports or colloquy, to be available to testify, to make suggestions or requests to counsel, to clarify misunderstandings. Indeed, the record here contains indicia of just such possibilities. The social worker, Ms. Hudson, testified that Cecilia needed a "one-to-one relationship” to help her mature, and thought Cecilia’s disturbing behavior "a normal response” to parental rejection. Those statements were not further developed. She also reported how one private agency which had rejected Cecilia after an overnight visit complained she had been "popping pills all night” when it turned out that Cecilia had had a throat infection.
Perhaps Cecilia could have shed light on other things as well, such as the circumstances that produced the discouraging litany of her rejections by other nonsecure agencies.[4] An opportunity to probe behind them was a matter of no small importance in this proceeding, since the Family Court Act reflects a deliberate and calculated plan to place " 'persons in need of supervision’ ” in authorized agencies for treatment and rehabilitation and not to commit them to penal institutions. (Matter of Anonymous, 43 Misc 2d 213, 215.)
*322 The Family Court Judge who presided at the dispositional hearing here did not lack conscientiousness, concern or sensitivity.[5] Nor does it appear that Cecilia’s absence was the consequence of any positive intent on the court’s part to exclude her. And, while it has been urged that the law guardian acquiesced in the exclusion, we find no clear showing of that in the record. Cecilia’s absence appears rather to be the result of the happenstance of a series of events permitted to come about by themselves.
Nonetheless, the fact is that, without sufficient legal cause, Cecilia, except for the time it took for a very brief announcement of the result of the hearing, was deprived of her right to be present at her dispositional hearing, an integral part of her PINS proceeding. Therefore, the disposition must be vacated.
We wish to make it clear, however, that, by this opinion, we do not say that Judges may never exclude PINS respondents from any part of a dispositional hearing. "[Due process] varies with the subject-matter and the necessities of the situation.” (Moyer v Peabody, 212 US 78, 84 [Holmes, J.].)
The sociolegal nature of the problems with which Family Court Judges deal requires the exercise of considerable discretion. No two cases are the same, though they all concern troubled lives. Tender years, mental health, behavior in the courtroom, the need to shield some children from the emotional trauma certain disclosures would be likely to produce, these are not the kind of considerations which Family Court Judges must or should ignore. Bench conferences out of the hearing of the youngsters involved may be required. Circumstances may indeed exist to justify limited exclusion from the courtroom. However, the norm must be inclusion. Where there is absence, or exclusion is directed on the court’s own motion or on application of the law guardian, its justification must be capable of expression and rationalization and should be recorded contemporaneously. Further, such absence or *323 exclusion, where necessary, should be no broader than circumstances require.
Accordingly, the order should be reversed and a new dispositional hearing held, along with such other proceedings, if any, as the Family Court may deem appropriate in view of the passage of time since the original disposition.[6]

. Temporary foster home care is provided by the Commissioner of Social Services of New York City as an alternative to "secure” detention.

. The appointment by the Family Court of a law guardian where independent legal representation is not available to the minor for financial reasons or "other circumstances” is provided in section 249 of the Family Court Act. This is to help assure "a practical realization of due process of law” (Family Ct. Act, § 241).

. Cecilia is now detained in such a facility, the Hudson Training School.

. Cecilia’s probation officer reported that she had been rejected by at least 23 such agencies. Of those, 19 rejected her because no vacancies existed, because of her age, residence or without giving a reason. Only four thought her not a suitable candidate because of her personal problems and needs. The officer’s recital calls attention to the societal problems posed by the nonavailability of facilities for certain neglected children which impedes even heroic efforts by our courts to place them in authorized nonsecure agencies before committment to more controlled settings (see, generally, Polier, A View From the Bench, 12). It need hardly be added that, under such circumstances, creating pressures for dispositions dehors the merits, the dispositional hearing can become an even more crucial factor in salvaging a young life.

. The qualities demanded of a Family Court Judge can be very great. Long ago it was said to include "Broadmindedness, executive ability, tact, knowledge of the law, knowledge of the principles governing social work, and knowledge of people. To these must be added the ability to convince appropriating authorities and the general public that sufficient funds must be made available”. (US Department of Labor, Children’s Bureau, The Child, The Family And The Court 36 [Pub. No. 193, 1929] [study by Flexner, Oppenheimer and Lenroot].) Much of that expertise may only be "acquired by blood, sweat and tears”, according to New York City Family Court Judge I. Leo Glasser. (Statement before Select Committee on Child Abuse of the New York State Legislature, Dec. 7,1971.)

. (See Matter of Smith, 21 AD2d 737.)