OPINION OF THE COURT
Damian J. Amodeo, J.
FACTS
Respondent is before the court on a petition alleging that he *471 is a person in need of supervision (hereinafter PINS) as provided in article 7 of the Family Court Act. The petitioner is the principal of a local junior high school, where the respondent is a student. In substance the petition alleges that respondent is incorrigible and beyond the control of his parent and other lawful authority in that respondent was involved in a physical confrontation in the school hallway with another student; that respondent was involved in a number of other specific incidents at the school; and, that respondent walked out of a PINS assessment and refused to return to complete the assessment.
The entire factual basis for the petition is stated to be "upon information and belief’ and the source of that belief is stated to be the school records. No supporting depositions or other documents were annexed to or made a part of the petition.
Respondent’s Law Guardian made a motion to dismiss the petition on the ground that it does not contain any nonhearsay allegations relating to the misconduct charged. While acknowledging that article 7 of the Family Court Act does not specifically require that a PINS petition be supported by nonhearsay statements (see, Family Ct Act § 732), respondent urges that, since a significant liberty interest is at stake in a PINS proceeding, the standard applicable in a juvenile delinquency (hereinafter JD) proceeding should also apply in a PINS proceeding. Respondent argues that the provisions of section 311.2 of the Family Court Act, which require that every element of the crime charged be supported by nonhearsay statements, should be read into section 732. In the alternative, respondent contends that article 7 should be declared unconstitutional to the extent that its provisions fail to parallel the notice requirements set forth in article 3 of the Family Court Act.
In reviewing this matter the court has considered the oral arguments of counsel together with the affirmations and memoranda submitted. The Attorney-General was afforded an opportunity to comment on the constitutional issues raised (CPLR 1012 [b]); however, no pleadings or memoranda have been received from that office.
ISSUES
The questions presented are whether there is a constitutional requirement that the character of the notice given in a *472 PINS proceeding must be coextensive with the notice required in a JD proceeding; whether any deficiency in the New York statutory scheme for handling PINS proceedings mandates a finding that the statute in question is unconstitutional or whether the court can cure any deficiency; if it is found proper to read the provisions of section 311.2 into section 732, whether the instant petition is adequate, when measured against that standard; and, if found to be inadequate, whether amendment of the petition should be permitted.
CONSTITUTIONAL CONSIDERATIONS
Before a court of first instance may declare a statute unconstitutional, every other alternative must be exhausted (see, People v Darry P., 96 Misc 2d 12, 16, and cases cited).
(a) Due Process
The United States Supreme Court in In re Gault (387 US 1, 33-34) held that due process "does not allow a hearing to be held in which a youth’s freedom and his parents’ right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet.” At the same time, the Gault court did not specify the character of the notice which must be given to satisfy due process.
The presentment agency argues that because the court cannot issue a dispositional order placing respondent in a secure detention facility, the requirements relating to the content of a PINS petition should be subject to less stringent scrutiny than that applicable in a JD proceeding. On the other hand, although secure detention is not a permissible disposition in a PINS proceeding, the alternatives available could have a profound impact on the right of a child to live in his own home; to have daily contact with his family and friends; to continue to be enrolled and participate in the activities of a local school; to reside in the community in which he was raised; or to otherwise be free to conduct him/herself as a youth, unburdened by an order of disposition directing placement in one form or another (see, Family Ct Act § 756). The court in Matter of Andrew R. (115 Misc 2d 937, 939) noted that a "PINS proceeding is quasi-criminal in nature, involving the potential for significant governmental interference in the liberty of the child (Family Ct Act, §§ 754, 756). Therefore, the *473 due process rights accorded to a respondent in a juvenile delinquency proceeding apply with equal force to a PINS respondent (Matter of Cecilia R., 36 NY2d 317; Matter of Iris R., 33 NY2d 987; Matter of Theodore F., 47 AD2d 945; Matter of Renaldo R., 73 Misc 2d 390; Matter of George C., 91 Misc 2d 875).” While the liberty interest at stake in a PINS proceeding may differ in degree from that at stake in a JD proceeding that difference is not of sufficient magnitude to change the fundamental principles and safeguards which must be applied.
Notwithstanding the civil characterization given to JD and PINS proceedings and the laudable goals set by the framers of legislation pertaining to such proceedings, from an early date these matters have been treated as quasi-criminal. Not only must the criminal burden of proof be met in each type of proceeding (see, In re Winship, 397 US 358; Matter of Richard S. , 27 NY2d 802), but a host of other rights granted to an adult criminal defendant have been made applicable to juveniles charged with misconduct (see generally, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 711, at 9-15). As the court in Winship noted (at 365-366), the "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts”. At the same time, courts have recognized that every safeguard applicable in adult criminal proceedings need not be applied in all proceedings in which young people are charged with wrongdoing (see, e.g., Matter of Lawrence D., 125 Misc 2d 944, 952, and cases cited).
Prior to the legislation which transferred JD proceedings to article 3, the court in Matter of Michael E. (68 Misc 2d 487, 489-490) indicated that "there are no real distinctions between the judicial processing of a person in need of supervision and the treatment afforded a juvenile delinquent save for that exercised by the Judge at the dispositional hearing.” While recognizing the capacity of the Legislature to adopt a meaningful distinction between the various classes of problem juveniles, the court held that until the philosophy, procedures and treatment of such problem juveniles was modified, an alleged PINS is entitled to no less due process than is an alleged juvenile delinquent.
The Legislature’s creation of a separate article within the Family Court Act to deal with JD proceedings codified much of the case law which had developed since the decisions in Gault and Winship (supra). That case law evolved largely as a consequence of the shortcomings of the procedures set forth in *474 article 7 of the Family Court Act, previously applicable to both JD and PINS proceedings. While these changes indicated a clear legislative intent to codify a more formal set of procedures in JD proceedings, did those changes also suggest an intent to relax the procedural safeguards applicable to PINS proceedings? If so, would it be proper to give effect to the distinction thus created?
Some courts appear to have made an attempt to dilute the due process and other constitutional rights of an alleged PINS by merely asserting that such proceedings are not criminal in nature (see, e.g., Matter of Mary Jane HH., 120 AD2d 906). However, the stated purpose of and procedures outlined in article 7 make it clear that it was the intent of the Legislature to afford an individual accused of being a PINS with procedural safeguards which would protect fundamental rights guaranteed by the Constitution for an individual whose liberty interests are at stake (see, Family Ct Act §§711, 741 [a]; § 744 [b]).
(b) Equal Protection
Long before JD proceedings were removed to article 3 of the Family Court Act, there had been a clear trend in matters dealing with juveniles under article 7 to utilize an equal protection argument to support the application of various provisions of the Criminal Procedure Law to juvenile proceedings in Family Court (see generally, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 711, at 9-15). Now that the procedures in JD proceedings have been formalized in article 3 and, since the same fundamental liberty interests continue to be at stake in PINS proceedings brought under article 7, an equal protection argument could also be made to support the application of the procedural safeguards established in article 3 in PINS proceedings.
As noted above, the court recognizes that under the doctrine of equal protection distinctions may be made among groups of individuals on the basis of reasonable classifications (Matter of Lawrence D., 125 Misc 2d 944, supra). Some might argue that such a reasonable classification has been established, when viewed from the perspective of the interests and rights sought to be protected in a PINS proceeding as compared with those considered in a JD proceeding. For example, the character of the misconduct charged in a PINS proceeding is typically less offensive than that charged in a JD proceeding; the miscon *475 duct at issue in a PINS petition in many instances poses a threat more to the welfare of the misbehaving youth than to society as a whole; and, pursuant to article 7, certain mandatory diversion procedures, not applicable in article 3 proceedings, must be undertaken before a formal PINS petition may be entertained (see, Family Ct Act §§ 734, 735). However, once the PINS adjustment process has failed, the petition which is thereafter filed is processed in virtually the same manner as would a JD petition. And, as noted above, the dispositional alternatives available once an adverse fact finding is made, are not significantly different from those available in a JD proceeding. Thus, although there have been some changes made relative to the manner in which a PINS is initially processed, as a practical matter, once those initial, remedial efforts have been exhausted, the basic shift in philosophy, procedure or treatment contemplated by the court in Matter of Michael E. (68 Misc 2d 487, supra), has not been expressed nor effectively accomplished by the mere transfer of JD proceedings to a separate article of the Family Court Act. Applying a similar rationale, the court in Matter of Leslie B. (129 Misc 2d 715, 717-718) determined that the time limits and safeguards, applicable to extensions of placement in JD proceedings set forth in section 355.3 (5) of the Family Court Act should be applied to PINS proceedings. The court held that to do otherwise would "facilitate a greater potential for deprivation of liberty for an offense which has no criminal overtones than for one which does” (supra, at 717).
Based on the foregoing, this court determines that the distinction between the liberty interests at stake in a JD proceeding when compared to those at stake in a PINS proceeding is not sufficiently great to permit a juvenile alleged to be a PINS to be prosecuted on a petition based on allegations set forth in a less reliable form than that required by the New York statutory scheme established for a child alleged to be a JD. To hold otherwise would violate respondent’s equal protection rights. However, the failure of section 732 of the Family Court Act to require that the allegations of misconduct be in nonhearsay form does not compel that the statute be declared unconstitutional. The deficiency can be cured by reading the fundamental requirements of section 311.2 into article 7, which the court hereby does.
SUFFICIENCY OF THE INSTANT PETITION
Section 311.2 of the Family Court Act requires that the *476 essential factual allegations of the petition be supported in a nonhearsay form. A failure to conform to the requirements of section 311.2 renders the petition jurisdictionally defective (Matter of David T., 75 NY2d 927, 929; Matter of Russell M., 146 AD2d 629, 630; Matter of Verna C., 143 AD2d 94; see also, People v Alejandro, 70 NY2d 133, 139; People v Hall, 48 NY2d 927, rearg denied 49 NY2d 918). In the instant case the petition is stated to be "upon information and belief’. The source of petitioner’s belief is asserted to be the content of certain school records. No copies of the records relied upon, properly certified pursuant to CPLR 2307 or 4518, were annexed to the petition. There can be little argument that the petition is based upon pure hearsay. While properly certified school records, offered at a hearing, have been held sufficient to sustain a PINS petition (Matter of Kelly V., 94 Misc 2d 172, affd 74 AD2d 1008), on the facts before the court, petitioner’s reliance upon such an argument is misplaced. In the instant case the records upon which the petition is based were not filed with the petition in any form which might arguably come within the business records or other exception to the hearsay rule. Accordingly, the court determines that the petition fails to comply with the requirements of section 311.2 of the Family Court Act and is jurisdictionally defective.
APPLICATION TO AMEND
Article 7 contains no provision relative to the amendment of a petition. While article 3 of the Family Court Act allows a petition to be amended to correct certain minor errors (Family Ct Act § 311.5 [2]), a defect of the type present here is beyond the remedial scope of the foregoing section (see, Matter of Noel V., 142 Misc 2d 552, 553). The appellate rulings in Matter of Detrece H. (158 AD2d 307) and Matter of Rodney J. (108 AD2d 307) suggest that amendments of the character requested in the instant case may be permitted. However, those decisions predate Matter of David T. (75 NY2d 927, 929, supra) in which the Court of Appeals specifically held that "failure to comply with the statutory requirement [of Family Court Act § 311.2 (3)] must be deemed a nonwaivable jurisdictional [defect]”. Once it is determined that a petition is jurisdictionally defective, it is suggested that the court lacks the power to authorize an amendment of the character sought in this matter (but see, Matter of S.E., NYLJ, Nov. 9, 1990, at 22, col 4). Accordingly, the application to amend is denied.
*477 HOLDING
For the reasons set forth herein the petition herein is dismissed. The dismissal is without prejudice to such further submissions, in proper and sufficient form, as the presentment agency may deem appropriate.