In the Matter of KEITH H., A Person Alleged to be in Need of Supervision, Respondent. ANDREW MANNA, Appellant.

Second Department, February 22, 1993

APPEARANCES OF COUNSEL

*Ian G. MacDonald, County Attorney* of Dutchess County, Poughkeepsie *(Steven R. Kaufman* of counsel), for appellant.

*Schisler, Sall & Schindler,* Poughkeepsie *(Richard C. Schisler* and *David B. Sall* of counsel), for respondent.

### OPINION OF THE COURT

O'BRIEN, J.

The issue presented by this appeal is whether a petition based on hearsay allegations is constitutionally permissible in a proceeding under Family Court Act article 7 to adjudge a person in need of supervision (hereinafter PINS), even though a juvenile delinquency petition under Family Court Act article 3 must be based on nonhearsay allegations. We disagree with the determination of the Family Court that a petition based on nonhearsay allegations is required in a PINS proceeding and, accordingly, reverse.

### I.

This PINS proceeding was commenced by the principal of the respondent's junior high school. The petition alleged that the respondent, then 13 years old, was incorrigible and beyond the control of his parent or other lawful authority. Regarding the specific acts of misconduct, the petition alleged on information and belief that, on various dates between November 1989 and April 1990 the respondent was involved in physical confrontations with other students, refused to submit to school detention, and harassed other students. In addition, in June 1990 the respondent walked out of a PINS assessment conference. The allegations made upon information and belief were

based on school records. Those records were not made part of the petition.

The respondent orally moved to dismiss the petition on the ground that it was based on hearsay allegations and therefore was legally insufficient. The statute requires that the petition in a PINS proceeding specify "the acts on which the allegations are based and the time and place they allegedly occurred" but there is no requirement that the allegations be in nonhearsay form (Family Ct Act § 732 [a]).[1] In contrast, under Family Court Act article 3, a juvenile delinquency (hereinafter JD) petition is considered insufficient on its face unless the nonhearsay allegations in the petition and any supporting depositions "establish, if true, every element of each crime charged and the respondent's commission thereof" (Family Ct Act § 311.2 [3]).[2]

The respondent argued that Family Court Act § 732 was unconstitutional because it afforded less procedural protection to a PINS respondent than that which was available to a JD respondent. The Family Court declined to find Family Court Act § 732 unconstitutional but nevertheless determined that the nonhearsay requirement in Family Court Act § 311.2 (3) should be incorporated into Family Court Act § 732 on due process and equal protection grounds. Moreover, relying on

1. Family Court Act § 732 provides:

"Originating proceeding to adjudicate need for supervision.

"A proceeding to adjudicate a person to be in need of supervision is originated by the filing of a petition, alleging:

"(a) the respondent is an habitual truant or is incorrigible, ungovernable, or habitually disobedient and beyond the lawful control of his parents, guardian or lawful custodian, and specifying the acts on which the allegations are based and the time and place they allegedly occurred;

"(b) the respondent, if male, was under sixteen years of age and, if female, was under eighteen years of age at the time of the specified acts; and

"(c) the respondent requires supervision or treatment".

2. Family Court Act § 311.2 provides:

"Sufficiency of petition.

"A petition, or a count thereof, is sufficient on its face when:

"1. it substantially conforms to the requirements prescribed in section 311.1; and

"2. the allegations of the factual part of the petition, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the respondent committed the crime or crimes charged; and

"3. non-hearsay allegations of the factual part of the petition or of any supporting depositions establish, if true, every element of each crime charged and the respondent's commission thereof".

*Matter of David T.* (75 NY2d 927), which held that the failure to comply with Family Court Act § 311.2 (3) was a nonwaivable jurisdictional defect, the Family Court held that the petition could not be amended and must be dismissed *(see, Matter of Keith H.,* 150 Misc 2d 470).

## II.

Recent Court of Appeals decisions which have addressed the sufficiency of a JD petition under Family Court Act article 3 are not dispositive of the issue on appeal *(see, e.g., Matter of Jahron S.,* 79 NY2d 632; *Matter of Detrece H.,* 78 NY2d 107; *Matter of David T.,* 75 NY2d 927, *supra).* Those decisions relied on the express statutory nonhearsay requirement in Family Court Act § 311.2 (3) and the analogous provisions governing a criminal information *(see,* CPL 100.40 [1] [c]). The Court of Appeals applied case law governing the sufficiency of criminal informations to JD petitions *(see also, Matter of Edward B.,* 80 NY2d 458). Here, the issue is whether there is a constitutional mandate that a nonhearsay requirement be imposed in PINS proceedings in the absence of an express statutory provision.

## III.

Federal and State constitutional guarantees of due process apply to PINS proceedings *(see generally, McKeiver v Pennsylvania,* 403 US 528; *In re Gault,* 387 US 1; *Matter of Cecilia R.,* 36 NY2d 317; Family Ct Act § 711), and among the fundamental due process requirements applicable to such proceedings is fair notice of the charges *(see, In re Gault, supra).*

Generally, a determination as to whether a particular procedure comports with due process requires a balancing of the private and governmental interests involved. Other factors to be considered are the extent to which the procedure used contributes to the risk of an erroneous deprivation of a private interest and the probable value of additional substantive procedural safeguards *(see, Mathews v Eldridge,* 424 US 319, 334-335). Applying these factors, and bearing in mind that the due process standard in juvenile proceedings is fundamental fairness *(see, McKeiver v Pennsylvania, supra),* we conclude that due process does not dictate that the allegations in a PINS petition be in nonhearsay form.

The petition in a Family Court proceeding is the "sole instrument for * * * commencement, prosecution, and adjudi-

cation" *(Matter of Detrece H., supra,* at 110). A PINS respondent therefore has an interest in a procedure which ensures him not only adequate notice of the charges but which also protects him from being subjected to a court proceeding on less than reliable allegations. A nonhearsay requirement, however, is not needed to ensure reliability and adequate notice in a PINS petition. Under the statute, before a PINS petition may be filed, the Probation Department must schedule an assessment conference with the prospective petitioner and the respondent concerning alternatives to a petition. Only if this adjustment procedure fails may a petition be filed *(see,* Family Ct Act § 735). Therefore, even before the petition is filed, the respondent has been advised of the source of the allegations against him and the particular conduct at issue. In view of the mandatory nature of the assessment conference procedure, we find that requiring nonhearsay allegations in the petition would not appreciably add to the reliability of the charges or to the respondent's knowledge of the conduct which is the subject of the petition.

While the imposition of a nonhearsay requirement would have no significant impact on the respondent's right to adequate notice of the charges, it might interfere with the State's goal of providing an informal procedure whereby youths at risk of committing more serious acts receive appropriate rehabilitation and treatment. Unlike a JD petition, which may be based on one isolated act, a PINS petition must be based on a course of conduct *(see, Matter of Raymond O.,* 31 NY2d 730; *Matter of David W.,* 28 NY2d 589). A parent or school principal may have reliable knowledge, albeit hearsay, of the respondent's conduct over a period of time which warrants court intervention before the respondent harms himself, or someone else, or graduates to criminal activity. To require the petitioner to provide sworn statements from others to support the various acts of misconduct specified in the petition would be unduly burdensome and could act as a barrier preventing parents or others unversed in the court system from seeking assistance.

## IV.

We also find unpersuasive the respondent's argument that his right to equal protection of the laws was violated because the respondent in a JD proceeding must be prosecuted based upon a nonhearsay petition. The Legislature is not precluded

from treating different classes of juveniles differently *(see, e.g., Matter of Quinton A.,* 49 NY2d 328 [juveniles who perpetrate crimes of violence on older persons may properly be classified for treatment purposes in a different category from other juvenile offenders]). As a general rule, legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate State interest. Moreover, the Equal Protection Clause affords wider latitude when social or economic legislation is at issue *(see, Cleburne v Cleburne Living Ctr.,* 473 US 432, 440; *see also, Matter of Quinton A., supra).* Only where the classification is by suspect category, such as race, status as an alien, or national origin, or where it "impinges upon some fundamental constitutional right such as liberty" is the classification subject to strict scrutiny *(Matter of Quinton A., supra,* at 337; *see also, Cleburne v Cleburne Living Ctr., supra).*

The strict scrutiny standard of review is not applicable here. No suspect category is involved in the distinction between respondents in PINS and JD proceedings and, contrary to the Family Court's decision, we find that the distinction between hearsay and nonhearsay petitions has no effect on a respondent's liberty interest. The discretionary decision to detain a PINS respondent prior to the fact-finding hearing may not be predicated on the hearsay allegations of the petition. Pursuant to Family Court Act § 739 (a) (i), (ii), a respondent may be detained only if the court makes a separate determination that there is a "substantial probability that he will not appear in court on the return date" or "there is a serious risk that he may before the return date do an act which if committed by an adult would constitute a crime" *(see also, People ex rel. Wayburn v Schupf,* 39 NY2d 682 [pretrial detention of a youth pursuant to this section does not violate due process or equal protection]).[3] Detention pursuant to this section may not extend beyond three days unless special circumstances exist or unless there is a determination that probable cause exists that the respondent is a person in need of supervision. The probable cause determination must be based on the evidentiary standards applicable to a hearing on a felony complaint, i.e., only nonhearsay evidence is admissible *(see,* CPL 180.60 [8]).

---

**3.** In *People ex rel. Wayburn v Schupf* (39 NY2d 682, *supra)* the Court applied a strict scrutiny standard of review to the issue of whether the differentiation in treatment between youths under Family Court Act § 739 and adults with respect to pretrial detention was an impermissible denial of equal protection of the laws.

Although the ultimate disposition in a PINS proceeding may involve a deprivation of liberty after a fact-finding hearing, the disposition is not affected by the hearsay nature of the petition. Of course, only competent evidence is admissible at the fact-finding hearing (see, Family Ct Act § 744).

Having concluded that the rational basis standard of review is appropriate, the test to be applied is whether the classification "rests on grounds wholly irrelevant to the achievement of the State's objective" (McGowan v Maryland, 366 US 420, 425; People v Whidden, 51 NY2d 457, 460). The basis for a PINS adjudication is somewhat imprecise, requiring, for example, findings such as that the respondent is "incorrigible" or "habitually disobedient" (see, Matter of Patricia A., 31 NY2d 83). On the other hand, since a JD adjudication requires a finding that the respondent committed an act which, if committed by an adult, would have constituted a crime, the elements to be proved are precise and defined by the penal statutes. A PINS adjudication requires a finding that the respondent needs supervision or treatment (Family Ct Act § 732), while a JD adjudication requires a finding that the respondent needs supervision, treatment or confinement (Family Ct Act § 311.1), and secure detention is a dispositional alternative only in a JD proceeding. In view of the different nature of these proceedings, we find that the hearsay form of a PINS petition is consistent with the objective of providing a more informal procedure for those respondents whose conduct does not rise to the level of criminal conduct at issue in a JD proceeding.

We note that when the Family Court Act was amended in 1982 to create a separate article 3 for JD proceedings, the Legislature deliberately left the PINS procedures unchanged (see, Mem of Assembly Member Halperin in Support, Bill Jacket, L 1982, ch 920; Besharov, Introductory Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act art 7, at 6). The Legislature could reasonably have concluded that the informal nature of PINS proceedings should not be abandoned where the misconduct does not amount to criminal activity and the emphasis is on supervision and treatment rather than confinement. Whether to continue the informality of PINS proceedings or to incorporate more of the protections available in criminal proceedings is a policy choice for the Legislature. The Legislature has not changed the requirements for a PINS petition in the decade since Family Court Act article 3 was enacted. Incorporation of the nonhear-

say requirement in Family Court Act § 311.2 (3) in PINS proceedings is not constitutionally required. For this Court to impose such a requirement would amount to impermissible judicial rewriting of the statute *(see, e.g., Matter of Randy K.,* 77 NY2d 398).

Accordingly, the order appealed from is reversed, on the law, without costs or disbursements, the respondent's motion to dismiss the petition is denied, the petition is reinstated, and the matter is remitted to the Family Court, Dutchess County, for further proceedings.

MILLER, J. (dissenting). I cannot concur in the conclusion of the majority that a petition commencing a PINS proceeding need not be supported by legally sufficient nonhearsay allegations. I would thus affirm the order of the Family Court, essentially for the reasons stated by Judge Amodeo in his well-reasoned analysis of the due process violations present in this case *(Matter of Keith H.,* 150 Misc 2d 470).

Family Court Act § 711 provides a crystal clear statement of legislative intent that the purpose of Family Court Act article 7 "is to provide a due process of law" in the consideration and disposition of PINS proceedings. Indeed, " '[n]either man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law' " *(In re Gault,* 387 US 1, 13, quoting *Haley v Ohio,* 332 US 596, 601). In my opinion, to sustain a PINS petition based exclusively upon hearsay allegations amounts to a deprivation of due process in contravention of both constitutional notions of due process and legislative intent. Admittedly, Family Court Act § 732 does not require that a PINS petition be supported by nonhearsay allegations, while Family Court Act § 311.2 (3) expressly requires nonhearsay factual allegations to sustain a juvenile delinquency petition *(see, Matter of Jahron S.,* 79 NY2d 632). The difference in provisions regarding juvenile delinquency and PINS procedures is not, however, a result of considered legislative intent, since as noted by Professor Besharov, the 1982 amendment to the Family Court Act creating article 3 was the "product of a series of legislative compromises" one of which involved article 7 (Introductory Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act art 7, at 6). In order to gain passage of article 3, its drafters apparently agreed that no changes whatsoever would be made to article 7. This compromise resulted in many "unresolved ambiguities" such as the issue presently before

this Court (Besharov, Introductory Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act art 7, at 6). Therefore, neither the legislative history of the Family Court Act nor the express provisions of article 3 support the majority's conclusion that respondents in PINS proceedings, accused of less culpable conduct than those in juvenile delinquency proceedings, are entitled to lesser due process protection.

Moreover, notwithstanding this instance of statutory omission, many due process requirements expressly applicable to juvenile delinquency proceedings are expressly required in PINS proceedings as well. The provisions of article 7 require that in a PINS proceeding the respondent and his or her parent or legal guardian must be advised of the right to counsel (Family Ct Act § 741 [a]; *see, Matter of David B.,* 167 AD2d 885), and the respondent must be advised of the right to remain silent *(see, Matter of Theodore F.,* 47 AD2d 945). The evidence to be received at a PINS fact-finding hearing must be competent, material, and relevant (Family Ct Act § 744 [a]) and the quantum of evidence to sustain a petition is proof beyond a reasonable doubt (Family Ct Act § 744 [b]). These are identical evidentiary standards applicable to juvenile delinquency proceedings (Family Ct Act § 342.2; *see, Matter of Reynaldo R.,* 73 Misc 2d 390). Moreover, it has been recognized that juvenile delinquency and PINS proceedings are indistinguishable for purposes of the constitutional protections necessary in each *(see, Matter of George C.,* 91 Misc 2d 875). In this vein, it has been held that the pleading standards in juvenile delinquency and PINS proceedings are the same insofar as factual allegations must be sufficiently precise as to afford notice of the underlying charges, and the basis of the petitioner's knowledge must be clearly stated *(see, Matter of Michael E.,* 68 Misc 2d 487; *see also, Matter of Reynaldo R., supra).*

Case law has extended statutory due process considerations applicable to juvenile delinquency proceedings to PINS proceedings as well. For example, in *Matter of Cecilia R.* (36 NY2d 317, 320) the Court of Appeals condemned the practice of unnecessarily conducting hearings in PINS proceedings without the respondent being present. Noting that many due process requirements apply to juvenile proceedings as well as to adult criminal proceedings, the Court held that "the fundamental principle that a defendant has the right to be present at his own trial must be said to carry over * * * in the

framework of dispositional hearings held in the less formal settings of our juvenile courts" *(supra,* at 320; *see also, Matter of Kenneth S.,* 52 AD2d 880).

The reason that PINS proceedings require the same constitutional safeguards as are applicable to juvenile delinquency proceedings is that both are quasi-criminal in nature *(see, Matter of Andrew D.,* 99 AD2d 510; *Matter of Daniel T. C.,* 141 Misc 2d 50, 53; *Matter of Andrew R.,* 115 Misc 2d 937, 941; *but see, Matter of Mary Jane HH.,* 120 AD2d 906) and both may lead to a significant deprivation of liberty. It is significant that a respondent in a PINS proceeding may be detained after a petition is filed and *prior* to any fact-finding hearing where the court finds there is a substantial probability that respondent will not appear on the return date or a serious risk that the respondent might commit a criminal act prior to the return date (Family Ct Act § 739). The majority fails to recognize that such a prehearing detention impinges upon the child's fundamental liberty interests *(see, People ex rel. Wayburn v Schupf,* 39 NY2d 682, 686-687) and that such interests are equally fundamental when impinged upon in a PINS proceeding as in a juvenile delinquency proceeding. Moreover, when a petition is sustained, an adjudicated PINS may be "placed", *inter alia,* with the Commissioner of Social Services or the Division for Youth, *albeit* in a nonsecure facility *(see, Matter of Ellery C.,* 32 NY2d 588), and detention may be ordered pending an appropriate placement (Family Ct Act § 756; *see, People ex rel. Kaufmann v Davis,* 52 AD2d 931). These liberty interests are not insubstantial *(see, People ex rel. Kaufmann v Davis, supra,* at 931-932 [Damiani and Titone, JJ., dissenting]) nor are they rendered so merely because the respondent is charged with being incorrigible rather than with the violation of a penal statute.

The majority finds that a petition supported exclusively by hearsay allegations is inoffensive within the context of a PINS proceeding because only competent evidence is admissible at the fact-finding hearing and thus, the reliance upon hearsay allegations "has no effect on [the] respondent's liberty interest". However, this is equally true in juvenile delinquency cases, in which only competent evidence is admissible at the fact-finding hearing (Family Ct Act § 342.2 [1]), and yet, in juvenile delinquency cases, the petition must be supported by nonhearsay allegations. The majority cites no reason why such disparate procedures should be tolerated in PINS and JD

proceedings, when similar pre and postdispositional liberty interests are at stake.

Equally unsupported is the majority's conclusion that non-hearsay allegations are unnecessary to ensure reliability and adequate notice of PINS charges because an assessment conference must be held involving the prospective petitioner and the respondent prior to court intervention (Family Ct Act § 735). An assessment conference involving a petitioner who possesses only second-hand hearsay information will do nothing to enhance the reliability of the factual allegations. A petitioner such as the principal of the respondent's junior high school would be able to report at an assessment conference only what he had been told by the teachers who allegedly witnessed the respondent's disruptive behavior. Clearly the accuracy of information allegedly reported by the respondent's accusers cannot be verified or disproven in a conference involving only a petitioner who possesses no first-hand information *(see, People v Petralia,* 62 NY2d 47, 54-56 [Kaye, J., dissenting], *cert denied* 469 US 852). Indeed, a PINS proceeding could be initiated upon false or mistaken allegations which could never be corrected in the absence of conference participants with first-hand knowledge. In such a case, the absence of verifiable nonhearsay allegations could lead to unfounded and unwarranted proceedings and deprivations of liberty.

Moreover, legislation requiring assessment conferences in PINS cases was enacted in 1985, three years after the Legislature separated PINS from JD proceedings. Its purpose was totally unrelated to legislative concerns regarding the entitlement of PINS respondents to reliable notice of charges made against them in hearsay-based petitions. The stated purpose of such assessment procedures was rather the diversion of PINS cases from the Family Court through prepetition intervention *(see,* L 1985, ch 813, § 1). The Legislature therefore did not conceive of assessment conferences as a means of enhancing the reliability of hearsay allegations in a PINS proceeding, nor does the use of such conferences constitute a legislative determination that PINS petitions may provide less reliable hearsay allegations than the nonhearsay allegations required in JD petitions.

Finally, the majority postulates that a requirement that PINS petitions be supported by nonhearsay allegations would have a chilling effect upon potential petitioners, creating an unduly burdensome barrier that would prevent would-be peti-

tioners from seeking judicial intervention. This finding is wholly speculative. It is not supported by the record and is not even raised in the appellant's brief. In any event, the requirement of first-hand sworn allegations would act as a barrier primarily to unfounded or inaccurate allegations. Requiring nonhearsay allegations ensures accuracy, reliability, and in the end, the justifiability of the interference with the liberty interests at stake. Such a requirement imposes no undue burden on the petitioner, while the absence of such procedural safeguards amounts to a clear denial of due process. Accordingly, I would affirm the order dismissing the petition.

ROSENBLATT, J. P., and RITTER, J., concur with O'BRIEN, J.; MILLER, J., dissents in a separate opinion.

Ordered that the order is reversed, on the law, without costs or disbursements, the respondent's motion to dismiss the petition is denied, the petition is reinstated, and the matter is remitted to the Family Court, Dutchess County, for further proceedings on the petition.