*239 OPINION OF THE COURT
Joseph E. Fahey, J.
This is an application brought by a witness subpoenaed before an Onondaga County Grand Jury seeking to have the subpoena quashed or to “be excused from testifying” upon the ground that she is the subject of person in need of supervision (PINS) proceeding and a witness in a neglect proceeding in Onondaga County Family Court. In support of the application her attorney contends that her testimony “will presumably deal with the subject matter of the two Family Court matters that have not been resolved.” Additionally, she urges that if “found to be a Person In Need of Supervision, she would be facing placement in a non-secured detention facility,” and, as such, “any testimony she gives could put her liberty at stake.” Upon receipt of the application, the court determined it to be made pursuant to section 2304 of the Civil Practice Law and Rules and heard oral argument on the part of the People and the movant in camera on February 9, 2005.
Criminal Procedure Law § 190.40 provides:
“1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.
“2. A witness who gives evidence in a grand jury proceeding receives immunity unless:
“(a) He has effectively waived such immunity pursuant to section 190.45.”
In the instant case, it is uncontraverted that the movant will not be obligated to execute a waiver of immunity. Thus, the question turns upon whether the grant of transactional immunity conferred by section 190.40 of the Criminal Procedure Law extends to the PINS proceeding pending in the Family Court in this county.
The issue of whether the Fifth Amendment privilege against self-incrimination applied to juvenile proceedings was fully discussed by Justice Fortas in In re Gault (387 US 1, 47-48 [1967]) in which Justice Fortas observed:
“It would indeed be surprising if the privilege against self-incrimination were available to hardened criminals but not to children. The language of the Fifth Amendment, applicable to the States by operation of the Fourteenth Amendment, is unequivocal and without exception. And the scope of *240 the privilege is comprehensive. As Mr. Justice White, concurring, stated in Murphy v. Waterfront Commission, 378 U. S. 52, 94 (1964):
“ ‘The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory ... it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.’ ”
Following the decision in Gault, New York amended its law governing both juvenile delinquency (JD) and persons in need of supervision proceedings to require that the subject of those proceedings be advised of their right to counsel, or alternatively, appointment of a law guardian (see, Family Ct Act §§ 360.3, 741). The courts of New York, however, have differed on the issue of whether a PINS proceeding, like a JD proceeding, is a quasi-criminal proceeding. In Matter of Keith H. (188 AD2d 81 [1993]), the Appellate Division, Second Department, held that section 732 of the Family Court Act was not unconstitutional despite the fact that it afforded less procedural safeguards for a PINS respondent than that afforded to a JD respondent under article 3 of the act. In so holding, Justice O’ Brien observed:
“Federal and State constitutional guarantees of due process apply to PINS proceedings (see generally, McKeiver v Pennsylvania, 403 US 528; In re Gault, 387 US 1; Matter of Cecilia R., 36 NY2d 317; Family Ct Act § 711), and among the fundamental due process requirements applicable to such proceedings is fair notice of the charges (see, In re Gault, supra).” (188 AD2d 81, 84 [1993].)
Notwithstanding this observation, the Court went on to take note of the different objectives of the two proceedings and that it was for the Legislature to import more constitutional criminal protections into the PINS proceedings if it so desired.
The Third Department has been steadfast in its position that the requirements of Family Court Act § 321.3 mandate that a respondent in a JD proceeding be informed of his rights before an admission can be made and that the respondent must be afforded a fact-finding hearing, adopting the Second Department’s rationale in Matter of Keith H. (188 AD2d 81 [1993]). In Matter of Jason O. (197 AD2d 784 [1993]), Justice Casey held:
“This Court has recognized a clear distinction between a juvenile delinquency proceeding under the *241 Family Court Act article 3 and a PINS proceeding under Family Court Act article 7 (see, Matter of Jodel KK. 189 AD2d 63, lv denied 82 NY2d 652). The Second Department has noted that conduct under article 7 does not rise to the level of criminal conduct and therefore, the emphasis in a PINS proceeding is on ‘supervision and treatment rather than confinement’ (Matter of Keith H., 188 AD2d 81, 87). Because of this distinction, we decline to extend the requirements of Family Court Act § 321.3 to PINS proceedings under article 7.” (197 AD2d 784, 785 [1993]; see, also, Matter of Mary Jane HH., 120 AD2d 906 [3d Dept 1986]; Matter of Guy II., 192 AD2d 770 [3d Dept 1993].)
The Appellate Division, Fourth Department, on the other hand, has taken the opposite view, and has held that the requirements of section 321.3 are imported into article 7 proceedings. (See, Matter of Christopher W., 154 AD2d 937 [1989]; Matter of Jacqueline P., 149 AD2d 933 [1989]; Matter of Rickey B., 158 AD2d 1002 [1990].)
The Court of Appeals addressing the very narrow issue of whether a respondent in a PINS proceeding must be advised of her rights under section 321.3 of the Family Court Act held no such requirement existed. In Matter of Tabitha LL. (87 NY2d 1009 [1996]), the Court in a footnote to a memorandum decision addressed the Fourth Department holdings noting, “[t]o the extent Matter of Jacqueline F. (149 AD2d 933), Matter of Rickey B. (158 AD2d 1002), and Matter of Christopher W. (154 AD2d 937) are to the contrary, they are not to be followed.” (87 NY2d 1009, 1011 n [1996].)
What the Court of Appeals did not address, however, was the underlying issue of whether the PINS proceedings, like the JD proceedings, were quasi-criminal in nature as declared in the Third Department decisions. While one can argue that such a distinction is implicit in their holding and the footnote, such a conclusion is somewhat speculative. Moreover, even if this were the proper conclusion, it does not so facilely dispose of the issue of the extent to which a grant of transactional immunity in a grand jury proceeding impacts on the transaction or the testimony sought to be utilized in such a proceeding. The only case which addressed this issue appears to be Matter of Mary Jane HH. (120 AD2d 906 [1986]), which held that a grant of immunity pursuant to section 190.40 of the Criminal Procedure Law did not immunize the respondent from being subject to a *242 PINS adjudication upon the theory that “[ijmmunity such as that conferred by CPL 190.40 extends only to evidentiary use in criminal proceedings (see, CPL 50.10; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 50.10, p 307).” (120 AD2d 906, 907 [1986].) This analysis, however, misconceives both the nature of transactional immunity as well as the plain language of the statute itself. In Kastigar v United States (406 US 441, 443-444 [1972]), Justice Powell laid out the historical nature of immunity, writing:
“The power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence. The power with respect to courts was established by statute in England as early as 1562, and Lord Bacon observed in 1612 that all subjects owed the King their ‘knowledge and discovery.’ While it is not clear when grand juries first resorted to compulsory process to secure the attendance and testimony of witnesses, the general common-law principle that ‘the public has a right to every man’s evidence’ was considered an ‘indubitable certainty’ that ‘cannot be denied’ by 1742. The power to compel testimony, and the corresponding duty to testify, are recognized in the Sixth Amendment requirements that an accused be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his favor. The first Congress recognized the testimonial duty in the Judiciary Act of 1789, which provided for compulsory attendance of witnesses in the federal courts.”
He went on to add (at 444-445):
“But the power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination. The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been *243 zealous to safeguard the values which underlie the privilege.”
Although the Court was then considering the parameters and limits of “testimonial immunity” rather than “transactional immunity” as conferred by New York (see, CPL 50.10; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 50.10, at 115), Powell was quite explicit that transactional immunity was broader than the Fifth Amendment privilege against self-incrimination and afforded greater protection, when he observed (at 453):
“We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege.”
Moreover, section 50.10 of the Criminal Procedure Law does not limit its application to merely the prosecution of criminal offenses but defines “Immunity” as:
“A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses ‘immunity’ from any such conviction, penalty or forfeiture.” (CPL 50.10 [1] [emphasis added].)
The Third Department in its holding in Matter of Mary Jane HH. (supra) additionally relied upon Matter of Anonymous Attorneys (41 NY2d 506 [1977]) as further support for its position. In that case, the Court held that section 50.10 of the Criminal Procedure Law did not immunize the appellant from disciplinary proceedings by the Erie County Bar Association for the conduct which was the subject of his grand jury testimony given without executing a waiver of immunity. In drawing this distinction, the Court, in a per curiam opinion, held:
“We hold that disciplinary sanctions are not punishment within the meaning of section 50.10. As Judge *244 Cardozo explained in Matter of Rouss (supra, pp 84-85): ‘Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards . .. . Whenever the condition is broken, the privilege is lost.’ ” (Supra at 508.)
In the case at bar the movant is not confronted with the loss of a licensing privilege but rather asserts a “liberty interest” in remaining free from detention, albeit nonsecure. Clearly that “liberty interest” is more fundamental than the privileges which may be conferred and lost by running afoul of state licensing requirements. While the sanctions which can be imposed in a PINS proceeding may not be as severe as the secure detention that can be imposed in a JD proceeding, the imposition of detention and supervision restrictions is, nevertheless, a sanction which restricts one of the most fundamental liberties, the freedom to move about and associate with others unmolested. Accordingly, the court finds that while the People have the authority to compel the movant’s testimony before the grand jury, the movant must be accorded the protections afforded by section 50.10 of the Criminal Procedure Law and not be subject to any Family Court proceeding in which her testimony will result in the loss of her liberty. While the court does not possess the authority to order the termination of a proceeding in a court of coordinate jurisdiction, such as Onondaga County Family Court, no application for the release of the movant’s testimony will be entertained for use in such proceeding.