Matter of Bobbijean P. (2005 NY Slip Op 50031(U))

[*1]

Matter of Bobbijean P.

2005 NY Slip Op 50031(U)

Decided on January 10, 2005

Family Court, Monroe County

O'Connor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 10, 2005

Family Court, Monroe County
In the Matter of BOBBIJEAN P., A Child under the Age of Eighteen Years Alleged to be Neglected by STEPHANIE P. AND RODNEY E., Respondents.
NN 03626-03

LORI ANN RICCI, ESQ., for Petitioner Monroe County Department of Human and Health Services, n/k/a Department of Human Services
CHRISTINE F. REDFIELD, ESQ., for Respondent Stephanie P.
EFTIHIA BOURTIS, ESQ., Law Guardian
ANNA SCHISSEL, ESQ., New York Civil Liberties Union Foundation, for Amici Curiae

Marilyn L. O'Connor, J.
On September 24, 2004, after the time to appeal expired, the attorney for Stephanie P. filed a motion (citing Family Court Act, § 1042 and CPLR § 5015) to vacate that portion of a neglect Decision and Order dated March 31, 2004. The order in question restricted respondent from conceiving another child until the respondent got Bobbijean and her other three children out of foster care and back into her own care.[FN1] The order at issue also had routine provisions (1) requiring the respondent to take certain steps in order to rehabilitate herself as a parent and (2) requiring the Department to assist her in this regard, so that if at all possible Bobbijean could be
 returned to respondent mother's custody and care as soon as possible. This motion is apparently an effort to not only protect respondent's personal "right to procreate" but to have the legality of this significant decision about limitations on that right reviewed on appeal, despite the expiration [*2]of the time to appeal.
Due to the unusual nature of the ordering provision restricting procreation, the New York Civil Liberties Union Foundation ("NYCLUF") filed a Notice of Motion Seeking Leave to File Brief Amicus Curiae. That motion was granted orally on October 20, 2004, and the brief submitted by the NYCLUF in support of the motion to vacate was accepted for consideration by the court, along with the submissions by the other parties. The NYCLUF brief and the Public Defender's brief extensively discussed their opposition to the underlying substantive order itself as a reason to vacate. The law guardian opposed the motion to vacate, and the Monroe County Department of Human and Health Services submitted that the court had subject matter and personal jurisdiction when it entertained the fact-finding and disposition hearings on this case, but took no position on the motion to vacate. Decision on the motion to vacate was reserved so that a written decision could be issued. The motion to vacate is now denied.
The respondent's Family Court Act, § 1042 arguments arise from Respondent's lack of participation in the proceedings. Her CPLR 5015 argument claims the court had no subject matter jurisdiction (i.e., authority) to issue the contested ordering provision.
FAMILY COURT ACT, § 1042 ARGUMENTS
Section 1042 of the Family Court Act, regarding hearings, states in its entirety:
If the parent or other person legally responsible for the child's care is not present, the court may proceed to hear a petition under this article only if the child is represented by counsel, a law guardian, or a guardian ad litem. If the parent or other person legally responsible for the child's care thereafter moves the court that a resulting disposition be vacated and asks for a rehearing, the court shall grant the motion on an affidavit showing such relationship or responsibility, unless the court finds that the parent or other person willfully refused to appear at the hearing, in which case the court may deny the motion. (Emphasis added.)

The child was represented by a law guardian, and the Respondent willfully refused to appear.
With an argument that implicitly concedes that respondent willfully refused to appear after attending the first court appearance, she nonetheless argues that even if this court finds the Respondent willfully refused to appear at the fact-finding hearing, this Court must still find that she did not willfully fail to appear on the adjudication of her right to procreate. According to her argument, this is because she had no actual or constructive notice that this particular right might be curtailed by the court. Respondent's secondary argument is that vacatur should be granted because Section 1042 permits the granting of the motion, and "[a]bsent unusual, unjustifiable circumstances" one's rights should not be terminated without one's presence at a hearing (citing Matter of Dominique L.B., 231 AD2d 948). The third argument, also based on Dominique, is that Family Court orders affecting fundamental rights have generally been vacated where a parent was not present unless other significant interests existed and the parent's rights were still protected. Dominique, however, expressly permits termination when there is a waiver of one's right to be present, and this court finds respondent's willful failure to appear was a waiver of her right to be present.
Furthermore, Dominique involved a violation of constitutional due process rights not present in the case at bar. In Dominique not only was there no showing that the respondent had waived her rights to participate in the proceedings, her attorney was even wrongfully excluded [*3]from participating. Thus, there was a clear due process violation. Such facts are not present here.[FN2] Similarly, in Matter of Kendra M. (175 AD2d 657), another termination of parental rights case also cited by respondent, a fact-finding hearing was held in the absence of respondent mother, who was known to be incarcerated and thus powerless to appear. Under those circumstances she should have been routinely body-ordered to court and brought there by law enforcement officials. That respondent was thus denied due process because she was not brought to court by the government which held her. The only other case cited by respondent is Matter of Cecilia R. (36 NY2d 317), a person-in-need-of-supervision case. There the respondent minor was inexplicably excluded from the disposition proceedings in her case, even though she was right outside the courtroom door. Cecilia R. did not default, so again, that case is not on point here.
Respondent's FCA § 1042 arguments have no merit. Respondent, who was unrepresented prior to the March 31, 2004 decision, did finally have a court-appointed attorney for the purposes of this motion to vacate. In her supporting affidavit, Respondent admits that she was asked by the court if she wanted an attorney for these proceedings related to Bobbijean. With careful wording, she says that at that time she indicated she "did not need one that day." She also says she does not recall being told what would happen if she did not come back to court, or that an order could be made which dealt with more than her infant daughter. She adds that no one told her anything about her "right to have more children possibly being effected [sic] by these court proceedings."
On the date she was in court, she would have been told the next court date and given a card with the next court date, as is the routine of the Monroe County Family Court. Significantly, she does not deny knowing the next court date. Default notices are sent to respondents as a matter of routine, and she does not deny receiving a default notice in this case mailed to her last known address. She does not deny that she deliberately defaulted with respect to further proceedings in this case. Instead, she writes that she has "had no steady mail delivery", as well as no steady housing and no phone. She seems to want the court and others to infer that she received no notice mailed to her regarding the default date and no notice whatsoever. The court will not make such an inference. The evidence that she both (1) willfully failed to appear and (2) chose not to have an attorney assigned to represent her, is clear, convincing, and not even directly contested.
 In her affidavit she now claims she would have attended further proceedings and would have wanted a lawyer if she had known that an order would issue which limited her rights to have other children. She does not in any way claim that she actually wishes to have more than the five children she already has but does not raise. Thus, there is no evidence that she actually wants more children now. It is clear, however, that she does not want to be subject to sanctions while [*4]the neglect order is in effect should she become pregnant again.
Having lost three other children in neglect and subsequent related proceedings, she was already familiar with the court process regarding losing custody of children born to her. This court suggests that the loss of custody and even potentially the loss of all contact with a daughter already born, would normally be deemed of more consequence and thus more motivating to a mother than the potential temporary loss of the right to conceive more children. Faced with the serious loss of Bobbijean, respondent should have been highly motivated to appear in court, to accept the assignment of free legal counsel, and to be advised of every step of the court proceedings. It was her responsibility as a parent to behave like a parent. (E.g., Bennett v Jeffreys, 40 NY2d 543, 546). Many parents in similar situations are very motivated to do whatever it takes to maintain a relationship with their children and regain custody but not this respondent. She chose not to accept legal counsel and deliberately did not even come to court after her first appearance. The granting of the motion to vacate is strictly discretionary under such circumstances. Respondent's behavior and her choices do not compel this court to grant her discretionary relief.
Her counsel appears to argue that the unprecedented nature of the court's order, "radically" restricting a fundamental liberty, justifies vacatur because it was made without express notice to her, even if she willfully chose not to appear and not to be represented by counsel. She also argues "the Decision and Order should have identified the right being curtailed as a fundamental right, irrespective of the Respondent Mother['s] ability to raise Bobbijean". (Emphasis added.) This court did and does recognize the fundamental nature of the right generally, but did not consider respondent's inability to parent Bobbijean or her siblings irrelevant. Her inability was critical, as set forth above. Additionally, as argued by the law guardian in opposition to the motion to vacate, the right of siblings to be together is also important. Separation of siblings is "likely to be traumatic and harmful" (Obey v Degling, 37 NY2d 768, 771; see Keating v Keating, 147 AD2d 675). Respondent's four children are already in two different homes and the law guardian believes a fifth child would necessitate yet a third home. Sibling visitation would become even harder, and perhaps never occur between some of the children. Respondent's children could lose not only their parents, but one or more of their siblings. The rights and well-being of respondent's children must not be ignored and hopefully will be enhanced by the ordered restriction on respondent's procreation rights.
There is no requirement that a respondent be notified of every possible clause which may be included in a disposition order. Nor is their a requirement that a court use standard boilerplate language in every case. Respondent failed to accept legal counsel or appear in court, and that is unfortunate. But that does not limit the court's authority to deal with her, or Bobbijean. While the court would have welcomed her participation and the participation of a lawyer on her behalf, the court was not required to locate her and somehow force her into court, and is legally allowed to proceed by default and in the best interests of the infant Bobbijean.
CPLR 5015 ARGUMENT
Respondent's CPLR 1015 argument, claiming the Family Court lacks jurisdiction to impose the restriction on procreation, also has no merit. Even respondent's counsel and the NYCLUF concede that Article 10 of the Family Court Act, dealing with neglect cases, empowers the court with "broad equity jurisdiction to issue. . . orders in the nature of a mandatory [*5]injunction requiring various acts to be done" (In re Burnett, 112 Misc 2d 318, 319). That such an order may never previously have been issued by another court does not mean it is improper. The authority for granting such an order pursuant to 22 NYCRR 205.83(a) & (b), describing the potential conditions for orders of disposition, is fully explained in this court's decision of Matter of Anna E. (Monroe County Family Court, Dec. 22, 2004). It is consistent with this court's statutory duty to try to reunite parents with their children in neglect cases. (Family Court Act, § 1055[b][vii][B][3]).
The respondent and the NYCLUF may simply want this issue on appeal and may be using this motion as a means to obtain that. It is not necessary. Since this court has issued a second decision, Matter of Anna E., supra,[FN3] containing a similar limitation on the right to procreate, and the time to appeal that second decision has not expired, the importance of an appeal in this case is greatly reduced. The respondent in the court's recent decision was represented by counsel. She did not default. That respondent, her counsel and all counsel involved were advised before the decision was issued that the court was considering issuing another "no-more-babies" provision. The respondent duly objected to the provision. The opportunity to brief the issue was provided. All substantive arguments raised by the NYCLUF and the Public Defender on this motion to vacate were considered before issuing the decision in Matter of Anna E. If Matter of Anna E. is appealed in a timely manner, as intended by that respondent's counsel, the NYCLUF may of course seek to submit a Brief of Amici Curiae in that matter for use by the Appellate Division. Then the merits of the key issue could be addressed without the unnecessary procedural complications created by the expiration of the time to appeal in this case.
CONCLUSION For the reasons set forth above, this court finds that respondent willfully failed to appear after her first court appearance and rejected the court's offer of legal counsel (which would have been provided to her for free), that there was no due process violation herein, that this court had jurisdiction to impose the narrowly tailored yet contested condition limiting procreation rights in its decision of March 31, 2004, and that as a matter of discretion the decision should not be vacated in part as requested on the motion.
NOW THEREFORE, it is
ORDERED that the respondent's motion to vacate the part of the March 31, 2004 decision regarding conceiving no more children is denied; and it is further
ORDERED that the decision and order of March 31, 2004 is adhered to.
DATED: January 10, 2005
 Rochester, NY _____________________________
HON. MARILYN L. O'CONNOR,
FAMILY COURT JUDGE 

Footnotes

Footnote 1: Said order was by its terms limited to a one-year period which could expire, be extended for up to one more year at a time, or terminated prior to one year by surrender of the child at issue. The no-further-conception order also applied to the father of Bobbijean.

Footnote 2: Termination of parental rights cases based on "permanent neglect" often follow standard neglect cases. Such termination cases are brought when parents remain unable to care for their children for such a long period, despite efforts by the Department to rehabilitate them, that it is deemed in the best interests of their children to be freed for adoption. This contrasts with neglect cases, such as the case at bar, where it is still the Department's duty to provide services in order to enable parents to function as parents and hopefully obtain the return of their child(ren). 

Footnote 3: The names of all parties, and other potentially identifying information, have been changed or eliminated to protect the privacy of those involved.