OPINION OF THE COURT
Titone, J.
The Village of Ocean Beach, which is located on Fire Island, *711 is a small community containing several publicly accessible beaches within its borders. Although access to the Village is limited because motor vehicles are not generally permitted, nonresidents, who may arrive by ferry or boat, often visit the Village’s beaches. Aware that its beaches are used by the public, the Village furnishes lifeguard protection for bathers at the taxpayers’ expense. However, no other facilities for beachgoers are maintained. It is undisputed that there are no toilet or other sanitary facilities available for the use of nonresident beachgoers.
Petitioner commenced the present article 78 proceeding to compel respondent, the Suffolk County Department of Health Services, to enforce Public Health Law § 1340 (2) (a) by requiring the respondent Village to provide toilet facilities for beachgoers. The trial court dismissed the petition after concluding that the statute’s history indicated that municipalities that maintain public bathing places free of charge were intended to be exempt from the requirements of the statute. The Appellate Division disagreed, holding that the absence of an express exemption in the statute is dispositive. Accordingly, the court reinstated the petition and remitted for further development of the record on the question whether toilet facilities that are "conveniently accessible” to beachgoers (10 NYCRR former 6.15 [a]) may be constructed on the Village’s beaches, some of which are included within a Federally designated "Dune District” (see, 36 CFR 28.3 [c]; 28.4 [b] [2]), without running afoul of the Fire Island National Seashore Act (16 USC § 459e). Following its determination, the Appellate Division granted respondents leave to appeal and certified the following question of law: "Was the order of this court dated March 21, 1988, properly made?”
We agree with the Appellate Division that the Village is not exempt from the requirements of Public Health Law § 1340 (2) (a). That statute imposes a duty upon the owner of "any bathing establishment of any kind” to "provide separate toilet rooms * * * constructed in a manner approved by the local board of health * * * and in such a way as not to contaminate the waters used by the bathers”. Although Public Health Law § 1341, which deals with safety requirements at bathing establishments, exempts municipally maintained bathing establishments from its terms (see, Public Health Law § 1341 [5]), Public Health Law § 1340, which deals with the entirely separate area of sanitary requirements, contains no analogous provision for a municipal exemption. Similarly, *712 while subdivision (1) of Public Health Law § 1340, which prohibits the maintenance of "bathing establishments” within 500 feet of a sewer connection, applies only to bathing establishments operated "for pay, or any consideration,” subdivision (2) of that same section is expressly made applicable to "any bathing establishment of any kind”. Thus, the plain language of the statute belies any claim that the beach facilities at issue here are exempt from the "toilet room” requirement because they are owned by a municipality and made available to the public without any charge.
It is well established that "[t]he fact that an act contains no exception or saving clause creates a strong presumption that the Legislature intended none” (McKinney’s Cons Laws of NY, Book 1, Statutes § 213, at 374; see also, § 74). This presumption is even stronger where, as here, the precise exceptions that are claimed to be implicit are explicitly provided for elsewhere in the statute (McKinney’s Statutes § 240; see, Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340).
The presumption that no exemptions for municipalities or beaches operated without charge were intended, which flows quite naturally from the absence of any exempting language in the statute, is not overcome in this case by an analysis of the statute’s history. Before the Public Health Law was recodified in 1953 (L 1953, ch 879), the rules governing both sanitary and safety requirements for "bathing establishments” were all collected in former Public Health Law § 312. The first requirement of that lengthy provision was made applicable only to "bathing establishments” operated "for pay, or any consideration,” and subsequent references in the statute to "such bathing establishments” made clear that the rest of its requirements were similarly limited in effect. Further, the last sentence of the statute explicitly exempted municipalities from all of the statute’s requirements (L 1905, ch 454, § 1, as amended by L 1942, ch 456; see, Curcio v City of New York, 275 NY 20).
When section 312 was reenacted under the recodified Public Health Law, it was placed under title 6 and divided into two substantive sections (Public Health Law §§ 1340 [sanitary requirements], 1341 [safety requirements]), and a third section dealing with enforcement (§ 1342). The exemption for municipalities was carried over into the substantive sections dealing with safety requirements, but no similar exemption was included in the section dealing with sanitary requirements. *713 Additionally the "for pay” limitation was retained in the subdivision addressing the location of sewer connections but was omitted from the subdivision requiring the erection of toilet facilities (Public Health Law § 1340 [1], [2] [a]).
Relying upon this history and a routine statement by the recodification’s drafters that "[n]o substantive changes in the existing law were reflected in the new recodified law” (State Health Dept Mem, 1953 NY Legis Ann, at 202), respondents would have us conclude that these rather significant omissions were simply the products of legislative oversight that may be corrected by judicial construction. We decline this invitation to "correct” a legislative enactment to make it correspond to respondents’ belief as to what the Legislature probably meant. Although it has been stated that, absent a clear expression of legislative intent, minor changes in verbiage appearing in recodifications should not be construed as working a substantive change in a long-standing rule (see, e.g., Matter of Brooklyn Union Gas Co. v Commissioner of Dept. of Fin., 67 NY2d 1036, 1039; Schneider v Schneider, 17 NY2d 123, 127), such statements have no application in a case such as this, where an entire sentence of a predecessor statute containing a single, integrated concept (i.e., an exemption for municipalities) has been omitted and the statute as a whole has been completely recast. "If some parts of a statute are omitted upon its revision, it is not the function of the courts to supply such parts; on the contrary, those parts are considered as repealed” (McKinney’s Cons Laws of NY, Book 1, Statutes § 422, at 596).[1]
By urging that we take the drafters’ declaration of "no intended change” literally, respondents are, in effect, asking us to ignore all of the legislatively drawn distinctions and to rewrite the law to conform to its prerevision form. Neither the case law nor the rules of statutory construction permits such extensive judicial redrafting (see, Matter of Barton v Lavine, 38 NY2d 785, 787).
*714 Respondents’ remaining arguments are unpersuasive. The contention that the Village is not operating a "bathing establishment” within the meaning of Public Health Law § 1340 lacks merit. The contention is based upon a purported distinction between "bathing establishments” and "bathing beaches”, terms which are used in the disjunctive elsewhere in article 13, title 6 of the Public Health Law (Public Health Law § 1341 [5]). However, while the body of Public Health Law § 1340 refers only to "bathing establishments”, the section is entitled "[bjathing places; sanitary requirements,” providing at least some indication that the Legislature used the terms interchangeably. In the absence of a definitive showing that the Legislature considered "bathing establishments” and "bathing beaches” to have different characteristics and that the Village’s beaches fall only within the latter category, we must conclude that the Village’s beaches are within section 1340’s intended coverage.
Respondents’ alternative argument — that requiring the construction of toilet facilities on the Village’s beaches would violate the Federal rules for "Dune Districts” under the Fire Island National Seashore Act (16 USC § 459e; see, 36 CFR part 28) — cannot be resolved on the present record. Although most of the Village’s beaches are located in a designated "Dune District”, within which construction is absolutely prohibited (see, 36 CFR 28.3 [c]; 28.4 [b] [2]), a question of fact remains as to whether there are locations that are within the Village but outside of the "Dune District” where a toilet facility available to beachgoers may be erected. Further, the possibility that portable toilet facilities may be installed without bringing the Village into conflict with the "Dune District” rules has yet to be explored. Thus, the Appellate Division’s decision remitting for further proceedings was appropriate.[2]
Finally, to the extent that there may be fiscal or practical *715 consequences to requiring municipal bathing establishments to conform to the Public Health Law’s strictures concerning toilet facilities, those concerns are more appropriately addressed to the Legislature, which may weigh the costs against the public health interests involved. Indeed, the record before us is devoid of evidence to support the dissenters’ contentions that constructing and maintaining toilet facilities pose "a costly and onerous burden among the various statutory requirements” (dissenting opn, at 718). Moreover, the dissenters’ exclusive emphasis on the supposed high cost and difficulty of maintaining toilet facilities ignores the competing value of expanding the public’s use of the Village’s beaches by making them practically more accessible to the nonresidents who might wish to use them. In the final analysis, issues such as whether the Legislature could sensibly require noncommercial beach owners to provide toilet facilities while exempting them from other sanitary requirements and whether the other safety and sanitary requirements of the statute "are equally salutary and important from a public health perspective” (see, id.) are judgments that only the Legislature should make.[3]
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. The dissenters also rely on the drafters’ "no substantive changes” declaration, as well as on the presumption that language changes resulting from recodifications do not lead to substantive changes in the absence of a clear legislative expression to the contrary (dissenting opn, at 718). However, the dissenters acknowledge that the recodification of the Public Health Law resulted in at least one substantive change, i.e., the elimination of municipalities’ automatic exemption from the toilet facility requirement in Public Health Law § 1340 (2) (a) (see, dissenting opn, at 716, 717). Thus, even under the dissenters’ analysis, neither the drafters’ "no substantive changes” declaration nor the "presumption” on which they rely furnishes an ironclad rule.

. The Appellate Division’s remand for a determination as to whether toilet facilities "conveniently accessible” to beachgoers could be erected was based upon a provision of the Sanitary Code that was in force at the time of its decision (10 NYCRR 6.15 [a]). In March of 1988, the provision on which the Appellate Division relied was replaced with a provision requiring the construction of toilet facilities on all bathing beaches unless such facilities are already available within 300 feet of the beach (10 NYCRR 6-1.15). Thus, in addition to determining whether toilet facilities can be built, or portable facilities installed, without running into conflict with the Federal "Dune District” rules, the court on remand will have to determine whether already existing toilet facilities within a 300-foot radius obviate the need for the Village to take action.

. Contrary to the dissenters’ expressed concern, we do not believe that our decision in this case will prompt wholesale abandonment by municipalities of the lifeguard services they now provide. Municipal governments are, by and large, highly responsible entities, and it should not be assumed that they would willingly expose the bathers who will inevitably use their beaches to increased safety risks simply to avoid constructing toilet facilities.