OPINION OF THE COURT
John M. Hunt, J.
Respondent has moved for an order directing that he be placed in the custody of the Commissioner of the New York City Administration for Children’s Services (ACS) or, alternatively, that the Commissioner be ordered to file a petition to extend respondent’s placement with the Commissioner and for a permanency hearing.
The pertinent facts in this proceeding are as follows. On February 20, 2009 petitioner, Jairy R., filed a petition pursuant to Family Court Act § 732 (a) alleging that her son, Jeffrey H., born February 25, 1993, is a person in need of supervision (PINS) as defined by Family Court Act § 712 (a).[1] The petition specifically alleges that respondent:
*450 “does not attend school in accord with the provisions of part one of Article 65 of the Education Law and is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of the parent or other lawful authority in that he [runs away]. The last time it was Feb. 18th for 3 days. Sometimes he has left for longer than 3 days. On 3 occasions, he has come back to the house at 5 AM or after 2 days. He’s failing in school. He doesn’t keep good company. He gets into fights outside of [the] home. He doesn’t follow orders at home and he does not arrive home at the time he was told to come back.”* [2]
Petitioner appeared before a judge of the court on February 20, 2009 and a warrant was issued to compel respondent’s appearance before the court (Family Ct Act § 738 [d]). Petitioner and her son appeared on February 23, 2009 and an attorney was appointed for the respondent. Based upon petitioner’s statement that her son was beyond her control, the reasonable efforts made by the ACS family assessment program to prevent or eliminate the need to remove respondent from his home, the substantial probability that respondent would not return to court if released, and the court’s conclusion that it would be contrary to respondent’s interests for him to remain in his home, the court ordered that he be detained pending further proceedings upon the petition (Family Ct Act § 739 [a], [c]).
A fact-finding hearing upon the PINS petition at which petitioner and respondent both testified was conducted on March 4, 2009. At the conclusion of the hearing, the court found by proof beyond a reasonable doubt that respondent was beyond the control of his mother based upon his repeated refusals to obey his mother’s lawful commands and his failure to obey the curfew set by his mother, and his remaining outside of the home overnight on multiple occasions without the permission of his *451 mother (Family Ct Act § 744 [b]). The court then adjourned the case for a dispositional hearing and directed that the Department of Probation conduct an investigation into the circumstances of the respondent and his family and that an exploration of possible placement resources be undertaken prior to the hearing (Family Ct Act § 750 [2]).
The dispositional hearing took place on March 20, 2009. The court received reports from the Department of Probation, St. Vincent’s Services, the authorized agency to which respondent had been remanded during the pendency of the proceeding, and school records concerning the respondent provided by the Department of Education. At the conclusion of the hearing respondent was adjudicated to be a PINS (Family Ct Act § 752), and based upon the evidence adduced at the hearing, the court ordered that the respondent be placed in the custody of the Commissioner of ACS for placement in a residential treatment center for a period of 12 months (Family Ct Act § 754 [1] [c]; § 756 [a] [i], [ii]; [b]).
On December 21, 2009 ACS filed a petition pursuant to Family Court Act § 756-a seeking to extend respondent’s placement for a period of 12 months and requesting that the court conduct a permanency hearing concerning the need to continue respondent’s placement (see Family Ct Act § 756 [b]; § 756-a [a], [b]). Proceedings upon the petition were conducted on January 13, 2010, and upon consent of the parties and counsel for the Commissioner of ACS, the placement of respondent was extended for a period expiring on August 12, 2010. The court further determined that the permanency goal for Jeffrey H. was to be returned to the custody of his parent, and that ACS had made reasonable efforts to achieve that goal during the period of placement.
A second extension of placement and permanency hearing petition was filed by ACS on July 9, 2010. The petition alleged that the respondent remained in the legal custody of the Commissioner and that he was residing at and receiving services from Mercy First, the authorized agency to whom physical custody had been transferred by ACS. The petition alleged that respondent was not yet ready to return to the home of his mother and stepfather, as he had not completed the program at the residential treatment center, he did not have a positive relationship or much interaction with his stepfather, and because Jeffrey was then only having limited six-hour off-campus visits with his mother and stepfather at the time. The permanency *452 goal remained to return Jeffrey to the custody of his mother upon his completion of the program at Mercy First. By order dated July 16, 2010 and upon the consent of the parties, respondent’s placement was extended until his 18th birthday, February 25, 2011. The court approved the permanency goal which was jointly designated to be a return to his parent or a discharge to independent living, and ACS was directed to provide Jeffrey with counseling to transition to independent living in the event that it was not possible to return him to his mother’s custody prior to the end of the placement. The court further found that ACS had continued to make reasonable efforts to effectuate the permanency plan for Jeffrey in the time since the court had initially extended his placement on January 13, 2010.
Respondent’s request for an order directing that the Commissioner file a further petition to extend his placement as a PINS juvenile must be denied. The last order extending respondent’s placement in the custody of ACS expired on February 25, 2011. While the statute authorizes the court to extend the placement of a person adjudicated to be a PINS, the statute clearly provides that a petition to extend placement “shall be filed at least sixty days prior to the expiration of the period of placement, except for good cause shown, but in no event shall such petition be filed after the original expiration date” of the prior order of placement (Family Ct Act § 756-a [a] [emphasis added]). Thus, as respondent’s most recent placement with ACS expired on February 25, 2011 and no petition for extension was filed prior to expiration, ACS may not file, nor may the Family Court Clerk accept, a petition to extend the expired placement. Even were such a petition to be filed, any order purporting to extend a lapsed PINS placement would be a nullity (see People ex rel. Schinitsky v Cohen, 34 AD2d 1020, 1021 [1970]; Matter of David B., 167 AD2d 885 [1990]; Matter of Brian B., 54 AD2d 713 [1976]; see also Matter of Brittny MM., 51 AD3d 1303, 1304-1305 [2008], lv denied 11 NY3d 713 [2008]; Matter of Charles B., 209 AD2d 895 [1994]).
To the extent that respondent seeks to have this court order the Commissioner of ACS to file a petition to extend his expired placement, the statute makes clear that the decision as to whether or not to seek an extension of placement for a PINS juvenile rests with the Commissioner (Family Ct Act § 756-a [a]). Courts may not compel a public official to perform discretionary acts which involve “the exercise of reasoned judgment which *453 could typically produce different acceptable results” (New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005]; see also Klostermann v Cuomo, 61 NY2d 525, 539 [1984]; Matter of County of Fulton v State of New York, 76 NY2d 675, 678 [1990]; Matter of Brusco v Braun, 84 NY2d 674, 679 [1994]; Matter of Klein v New York State Off. of Temporary & Disability Assistance, 84 AD3d 1378, 1380 [2011]).[3]
Respondent’s other request for relief, an order permitting him to reenter foster care in the absence of a valid order of placement or a valid order extending an order of placement, cannot be granted. While it is true that Family Court Act § 1091 was added to the statute as article 10-B in 2010 (L 2010, ch 342), and it permits the return of a former foster care youth under the age of 21 to foster care, where the discharge of the child was “due to a failure to consent to continuation of placement” if there is “a compelling reason for such former foster care youth to return to foster care,” there is no indication that this addition to the child protective statute was intended to apply to PINS proceedings.
The legislation which enacted Family Court Act § 1091 reflects that this addition to the child protective statutes “would amend the trial discharge provisions of Articles 10 and 10-A of the Family Court Act” and that it “would add a new Article 10-B to the Family Court Act” and make corresponding changes to the Social Services Law in order to permit reentry into foster care of a youth between the ages of 18 and 21 where the youth previously declined to consent to an extension of placement. The statute and legislative history are completely silent as to its applicability to juveniles who enter foster care under other articles of the Family Court Act (see Assembly Mem in Support, 2010 McKinney’s Session Laws of NY, at 1915; Mem of Off of Ct Admin, 2010 McKinney’s Session Laws of NY, at 2138-2140; see also 2010 Annual Report of the Assembly Committee on Children and Families, at 13-14 [Dec. 17, 2010], available at www.assembly.state.ny.us/comm/Children/2010Annual/index.pdf [last accessed Dec. 19, 2011]).
*454 While the attorney for respondent makes cogent arguments for expanding the coverage of Family Court Act § 1091 to juveniles who are placed under article 7 of the act, there can be no conclusion, only supposition, that the Legislature intended to apply the foster care reentry provisions to PINS juveniles. PINS proceedings are materially and procedurally distinct from child protective proceedings, and it is notable that PINS proceedings were formerly consolidated with juvenile delinquency proceedings, not child protective proceedings, in one article of the Family Court Act (Matter of Keith H., 188 AD2d 81, 87-88 [1993]). Under the current statute, a child who is adjudicated to be a PINS is a “status offender” (Matter of Naquan J., 284 AD2d 1, 5 [2001]), and not a juvenile delinquent, or an abused or neglected child (see Matter of Ellery C., 32 NY2d 588, 590-591 [1973]; Matter of Jeanette P., 34 AD2d 661 [1970]; Matter of Daniel I., 57 AD3d 666, 667 [2008]).
While delinquent, abused, neglected, and PINS youth may all meet the definition of “[dependent child[ren]” under Social Services Law § 371 (7), that same section of the Social Services Law defines each of these classes of children separately (Social Services Law § 371 [4-a], [4-b], [5], [6]). There is a clear distinction between PINS proceedings, juvenile delinquency proceedings, and child protective proceedings (see Matter of Jason O., 197 AD2d 784, 785 [1993]), and “[t]he Legislature is not precluded from treating different classes of juveniles differently” (Keith H. at 85-86; Matter of Jennifer G., 26 AD3d 437 [2006]). While the attorney for the respondent has advanced several valid reasons why the provisions of Family Court Act § 1091 should apply to formerly placed PINS juveniles, and even though this court finds itself in agreement, it is not within the court’s province to expand the coverage of Family Court Act § 1091 in the absence of an indication that the Legislature intended those provisions to apply to PINS juveniles.
In interpreting a statute such as Family Court Act § 1091, a court may not legislate under the guise of statutory interpretation (People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919; People v Boothe, 16 NY3d 195, 198 [2011]). Whether or not publicly announced, there may have been sound policy or fiscal reasons why the provisions of Family Court Act § 1091 were not specifically applied to PINS proceedings. The court cannot simply conclude that the failure to specifically extend the provisions of Family Court Act § 1091 to PINS juveniles was the result of an error or oversight on the part of the Legislature. *455 To the contrary, “the failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended” (People v Finnegan at 58; see also Pajak v Pajak, 56 NY2d 394, 397 [1982]; Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 285 [1997]). In that regard, it must be noted that the Legislature has not enacted legislation expanding the coverage of Family Court Act § 1091’s provisions during its current session, which if anything, tends to negate the possibility that the failure to include PINS juveniles in the 2010 legislation was erroneous or inadvertent.
To the extent that the attorney for the respondent contends that the omission of PINS juveniles from the legislation which enacted Family Court Act § 1091 creates a harsh result for those juveniles, a court “may not assume the legislative role and rewrite the statute to satisfy its own sense of justice” (People v Dozier, 78 NY2d 242, 254 [1991]). In the absence of a clear indication that there was an intention to extend the provisions of Family Court Act § 1091 to PINS juveniles who are no longer under the court’s jurisdiction owing to a lapsed placement, courts must defer to the other branches of government, as “the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the political branches of government” (Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 28 [2006] [citation omitted]).
Accordingly, as the Family Court’s jurisdiction over the respondent lapsed on February 25, 2011, and in the absence of a clear indication that the Legislature intended for the provisions of Family Court Act § 1091 to apply to formerly placed PINS juveniles such as the respondent, the motion is denied.

. At the time that the petition was filed, the statute defined a person in need of supervision to be
“[a] person less than eighteen years of age who does not attend school in accordance with the provisions of part one of article sixty-five of the education law or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of a parent or other person legally responsible for such child’s care, or other lawful authority, or who violates the provisions of section 221.05 of the penal law” (Family Ct Act § 712 [a]).
*450 The statute was amended in 2008 (L 2008, ch 569) and 2010 (L 2010, ch 58), to include violations of Penal Law § 230.00 and children who appear to be sexually exploited, as defined by Social Services Law § 447-a (1), under the definition of person in need of supervision.

. The PINS petition complies with the provisions of Family Court Act § 735 (g) (ii) as a report from the Administration for Children’s Services stating that specific diversion services were unsuccessfully offered by the agency is appended to the PINS petition (Family Ct Act § 732 [a] [iv]; see Matter of Rajan M., 35 AD3d 863, 864-865 [2006]; Matter of Leslie H. v Carol M.D., 47 AD3d 716, 717 [2008]; Matter of Samantha K., 61 AD3d 1322, 1323 [2009]; Matter ofJahad R., 68 AD3d 423, 424 [2009]).

. While Family Court Act § 255 empowers the court to seek the assistance and cooperation of public officers and officials “to further the objects” of the Family Court Act, resort to that section may not be had in order to compel public officials and officers to perform acts which are entirely discretionary (Matter of Ronald W., 25 AD3d 4, 10 [2005]; Matter of Brian L. v Administration for Children’s Servs., 51 AD3d 488, 495-496 [2008], lv denied 11 NY3d 703 [2008]; Matter of Jermaine H. [Lisa H.], 79 AD3d 1720, 1721 [2010]). In any event, Family Court has no jurisdiction over CPLR article 78 proceedings (Alpha S. v Krauskopf, 104 AD2d 755, 756 [1984]).