[955 NYS2d 90]

# In the Matter of JEFRY H., Appellant.

Second Department, November 21, 2012

### APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society*, New York City (*Tamara A. Steckler* and *Claire V. Merkine* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Leonard Koerner* and *Pamela Seider Dolgow* of counsel), for Administration for Children's Services, nonparty.

*Karen Freedman*, New York City (*Betsy Kramer* of counsel), for Lawyers for Children, Inc., amicus curiae.

### OPINION OF THE COURT

Lott, J.

In 2010, the legislature amended the Family Court Act by adding section 1091, which allows "former foster care youth" between the ages of 18 and 21 who have been discharged from foster care due to their failure to consent to the continuation of placement to move to reenter the foster care system (*see* L 2010, ch 342, § 8). At issue on appeal is whether Family Court Act

§ 1091 applies to individuals, such as the appellant Jefry H., who were placed in foster care after being adjudicated persons in need of supervision pursuant to article 7 of the Family Court Act. For the reasons which follow, we hold that Family Court Act § 1091 does so apply, and that the Family Court thus erred in concluding that Jefry H. is not eligible to return to foster care.

### Factual and Procedural Background

Jefry H. was born on February 25, 1993. Shortly before Jefry's 16th birthday, his mother filed a petition dated February 20, 2009, which alleged that Jefry was a person in need of supervision within the meaning of article 7 of the Family Court Act in that he was incorrigible, ungovernable, or habitually disobedient and beyond her lawful control (see Family Ct Act § 712 [a]). In an order of fact-finding and disposition dated March 20, 2009, the Family Court adjudicated Jefry a person in need of supervision and placed him, pursuant to Family Court Act §§ 754 (1) (c) and 756, in the custody of the Commissioner of Social Services of the City of New York (hereinafter the Commissioner) for placement at a residential treatment center for a period of 12 months. The order further provided that if Jefry remained in foster care, the Commissioner was obligated to file a petition for a permanency hearing no later than December 23, 2009, and that the permanency hearing was to be completed by February 23, 2010. In an order dated January 13, 2010, the Family Court granted the petition of the Administration for Children's Services (hereinafter ACS) for the extension of Jefry's placement and for a permanency hearing, extended Jefry's placement to August 12, 2010, and approved a permanency plan providing for reunification of Jefry with his mother by August 12, 2010. In an order dated July 16, 2010, the Family Court granted a second petition by ACS for the extension of Jefry's placement and for a permanency hearing, extended Jefry's placement to February 25, 2011, his 18th birthday, and approved a permanency plan providing for reunification of Jefry with his mother by February 25, 2011. On February 25, 2011, Jefry was discharged to the care of his mother.

About nine months later, by notice of motion dated November 22, 2011, Jefry moved, inter alia, pursuant to Family Court Act § 1091 to be returned to foster care placement. In support of his motion, he submitted his own affidavit. In his affidavit, Jefry stated that he was placed in foster care through the Mercy First

agency in a residential treatment center in Syosset. At the time of his discharge on his 18th birthday in February 2011, Jefry was employed full time by a catering company, and planned to reside with his mother, continue working, and explore a GED program. However, in June 2011 Jefry's hours at the catering company were cut due to a slowdown in business. Subsequently, he was unable to find a job despite looking for one and going on several interviews. According to Jefry, although he lived with his mother since leaving Mercy First, she was planning to give up her apartment and move to a rented room in a friend's house on December 1, 2011, and Jefry would be unable to live with her in that room. Jefry's mother also struggled with depression, and told Jefry that she might have to be admitted to an inpatient clinic for treatment if her depression did not improve. Jefry stated in his affidavit that he had no other place to live on a long-term basis. While Jefry's aunt would allow him to sleep on her couch for a few days at a time, she would not allow him to live with her full time because she did not have an extra room. Jefry further stated that he had kept in contact with the staff at Mercy First, and they told him that they would like to have him back on campus and that he would be accepted back if he returned to foster care. Finally, Jefry stated that he would like to return to Mercy First and finish high school there.

Although Jefry's motion was made on notice to ACS, ACS submitted no papers in opposition or in relation thereto. In an order dated December 6, 2011, the Family Court denied Jefry's motion, concluding that there was no "clear indication that the Legislature intended for the provisions of Family Court Act § 1091 to apply to formerly placed PINS [persons in need of supervision] juveniles" (*Matter of Jairy R. v Jeffrey H.*, 34 Misc 3d 448, 455 [2011]). Jefry appeals from so much of the order as denied that branch of his motion which was pursuant to Family Court Act § 1091 to permit his return to foster care. ACS has submitted a brief in support of Jefry's appeal. Lawyers for Children, Inc. has also submitted an amicus curiae brief in support of Jefry's appeal.

## Analysis

Effective November 11, 2010, the legislature created a new article 10-B of the Family Court Act entitled "Former Foster Care Youth Re-Entry Proceedings" (*see* L 2010, ch 342, § 8). Family Court Act § 1091, which is the sole section in the new article 10-B, is entitled "Motion to return to foster care placement," and provides, in part:

"A motion to return a former foster care youth under the age of twenty-one, who was discharged from foster care due to a failure to consent to continuation of placement, to the custody of the local commissioner of social services or other officer, board or department authorized to receive children as public charges, may be made by such former foster care youth, or by a local social services official upon the consent of such former foster care youth, if there is a compelling reason for such former foster care youth to return to foster care."

Family Court Act § 1091 (b) provides that a motion made pursuant to this section by a "former foster care youth" shall show, by affidavit or other evidence: (1) that the former foster care youth has no reasonable alternative to foster care; (2) that the former foster care youth consents to enrollment in and attendance at an appropriate educational or vocational program, unless evidence is submitted that such enrollment or attendance is unnecessary or inappropriate, given the particular circumstances of the youth; (3) that reentry into foster care is in the best interests of the former foster care youth; and (4) that the applicable local social services district consents to the reentry of such former foster care youth, or unreasonably refuses to consent to the reentry of such former foster care youth (*see* Family Ct Act § 1091 [a], [b]).

Here, Jefry's affidavit showed all of these things. Nevertheless, the Family Court denied the motion on the ground that there was no clear indication that the legislature intended for Family Court Act § 1091 to apply to individuals placed into foster care following adjudications as persons in need of supervision pursuant to Family Court Act article 7. We disagree with the Family Court's determination in this regard.

"In matters of statutory interpretation, our primary consideration is to discern and give effect to the Legislature's intention . . . [T]he text of a provision is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning. Additionally, we should inquire into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history. Finally, it is well settled that a statute must be construed as a whole and that its various sections must be considered with reference to one an-

other" (*Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012] [citations and internal quotation marks omitted]).

The "fact that an act contains no exception or savings clause creates a strong presumption that the Legislature intended none" (*Matter of Pokoik v Department of Health Servs., County of Suffolk*, 72 NY2d 708, 712 [1988] [internal quotation marks omitted]).

Contrary to the Family Court's determination, we conclude that Jefry was a "former foster care youth" within the meaning of Family Court Act § 1091. After his adjudication as a person in need of supervision pursuant to article 7 of the Family Court Act, Jefry was placed, pursuant to Family Court Act §§ 754 (1) (c) and 756, in the Commissioner's custody for a period of 12 months. While sections 754 (1) (c) and 756 of the Family Court Act do not contain the phrase "foster care," Family Court Act § 756-a, which concerns extensions of placements of individuals placed pursuant to Family Court Act §§ 754 (1) (c) and 756, does. Specifically, Family Court Act § 756-a (d) (ii) requires a court considering a petition for the extension of placement of a child who has attained the age of 16 to consider, among other things, "the services needed, if any, to assist the child to make the transition from foster care to independent living." In addition, Family Court Act § 756-a (f) provides that extensions of placements made pursuant to Family Court Act §§ 754 (1) (c) and 756 may continue beyond the child's 18th birthday, and until the child's 21st birthday, provided that the child consents to such an extension. Moreover, the order of fact-finding and disposition adjudicating Jefry a person in need of supervision and placing him in the custody of the Commissioner refers to Jefry being placed in "foster care," specifically providing that if Jefry remains in "foster care" the Commissioner was obligated to file a petition for a permanency hearing no later than December 23, 2009, and that the permanency hearing was to be completed by February 23, 2010. Finally, Social Services Law § 383-c (1), which concerns the guardianship and custody of children in foster care, defines a "child in foster care" for the purposes of that section as a "child in the care and custody of an authorized agency pursuant to section three hundred eighty-four-a of this title or *article* three, *seven* or ten *of the family court act*" (emphasis added).

The lynchpin of the Family Court's determination seems to have been its belief that Family Court Act § 1091 was placed

within article 10 of the Family Court Act, which article is entitled "Child Protective Proceedings." Based on this belief, the Family Court apparently concluded that Family Court Act § 1091 is only applicable to individuals placed in foster care following child protective proceedings commenced pursuant to Family Court Act article 10, and not to individuals placed in foster care in other ways. However, Family Court Act § 1091 was not placed within article 10 of the Family Court Act, but, rather, was enacted as the sole section in a newly created article 10-B of the Family Court Act, which article is entitled "Former Foster Care Youth Re-Entry Proceedings." Thus, nothing about the placement of section 1091 within the Family Court Act calls for restricting its applicability to youth who were placed in foster care pursuant to child protective proceedings.

Furthermore, nothing in the legislative history of Family Court Act § 1091 suggests that the legislature intended to restrict its applicability to youth who were placed in foster care following child protective proceedings. According to the Assembly Memorandum in Support of the bill that enacted Family Court Act § 1091:

> "Experience in Family Court has demonstrated, and a vast array of literature has documented, that all too often adolescents age out of foster care upon reaching age 18 or shortly thereafter wholly unprepared to function in society. Although the Family Court Act permits them to consent to continued foster care with its attendant supports and services until they reach the age of 21, many make precipitous decisions to show their independence and refuse to consent to remain in care even when they are desperately in need of assistance. Youth living in intact families are not faced with such decisions; they may leave home to attend college, but they do not abruptly terminate all connections with their families and often continue to receive financial and other aid. Youth leaving foster care, in contrast, often have no family to fall back on. For them, 'independent living' may be akin to falling off a precipice. The permanency legislation enacted in 2005 contains salutary provisions requiring social services agencies to ensure that such youth leave care with a 'significant connection to an adult willing to be a permanency resource.' This requirement

is helpful but often does not always fully meet the myriad needs of youth upon their discharge from foster care and during the period that immediately follows" (Bill Jacket, L 2010, ch 342 at 8).

The Assembly Memorandum further suggested that

"by providing a means of preventing homelessness and crime among these youth, the savings in the costs of homeless shelters, prisons, hospitals and public assistance for these youth, not to mention the costs of crime to society, will more than outweigh any state or local share of the costs of reentry of youth into foster care" (*id.* at 9).

These considerations apply with as much force to Jefry as they do to a youth who has been placed in foster care following child protective proceedings.

Finally, while it is true that the question of whether Family Court Act § 1091 applies to youth who have been placed in foster care following proceedings pursuant to Family Court Act article 7 is one of pure statutory reading and analysis, meaning that there is little basis to rely on any special competence or expertise of the administrative agency charged with its enforcement (*see Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]), we note that the New York State Office of Children and Family Services has interpreted Family Court Act § 1091 as applying to youth whose prior episode of care was initiated through juvenile delinquency or person in need of supervision proceedings under articles 3 and 7 of the Family Court Act, respectively (*see* NY St Off of Children & Family Servs Admin Directive 11-OCFS-ADM-02 at 3).

## Conclusion

For the foregoing reasons, the order is reversed insofar as appealed from, on the law, and that branch of Jefry's motion which was pursuant to Family Court Act § 1091 to be returned to foster care placement is granted.

BALKIN, J.P., HALL and COHEN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, and that branch of the motion of Jefry H. which was pursuant to Family Court Act § 1091 to be returned to foster care placement is granted.